688 S.E.2d 713 (2009)
In the Matter of N.B., I.B., and A.F.
No. COA09-811.
Court of Appeals of North Carolina.
November 3, 2009.
*714 Orange County Department of Social Services, by Lisa W. Reynolds and Carol J. Holcomb, for Petitioner-Appellee.
Richard Croutharmel, for Respondent-Appellant.
Pamela Newell Williams, for Guardian ad Litem.
BEASLEY, Judge.
Respondent appeals from the order terminating her parental rights to the minor children, N.B., I.B., and A.F.[1] We reverse and remand in part and affirm in part.
On 7 May 2007, Orange County Department of Social Services (DSS) filed juvenile petitions alleging that N.B., I.B., and A.F. were neglected juveniles. By order entered 28 September 2007, the children were adjudicated neglected and dependent juveniles. *715 On 15 November 2007, the trial court conducted a permanency planning hearing at which the trial court ceased reunification efforts and changed the permanent plan to adoption.
On 14 January 2008, DSS filed a motion to terminate Respondent's parental rights. On 27 June 2008, the trial court entered an order terminating Respondent's parental rights. Respondent gave notice of appeal.
While the appeal was pending, the trial court conducted a second termination hearing on 6 November 2008 and again terminated Respondent's parental rights. On 28 January 2009, Respondent filed a motion to vacate the second termination order because the trial court lacked subject matter jurisdiction. By order entered on 5 February 2009, the trial court vacated the second termination order.
On 20 January 2009, this Court reversed the 27 June 2008 termination order, and remanded for a new hearing because DSS failed to present evidence to support a conclusion that grounds for terminating parental rights existed. In re N.B., ___ N.C.App. ___, 670 S.E.2d 923 (2009). Consequently, the trial court conducted another termination hearing on 19 March 2009. The trial court found grounds existed to terminate Respondent's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(6), and entered an order terminating Respondent's parental rights on 17 April 2009. Respondent appeals.
On appeal, Respondent argues that the trial court erred in finding and concluding that grounds existed to terminate her parental rights under N.C. Gen.Stat. § 7B-1111(a)(6).
Termination of parental rights cases involve two separate components. In re Blackburn, 142 N.C.App. 607, 610, 543 S.E.2d 906, 908 (2001). At the adjudicatory stage, "the petitioner has the burden of establishing by clear and convincing evidence that at least one of the statutory grounds listed in N.C. Gen.Stat. § 7B-1111 exists." In re Anderson, 151 N.C.App. 94, 97, 564 S.E.2d 599, 602 (2002). This Court reviews the adjudicatory stage to determine "whether the trial court's findings of fact are based on clear, cogent, and convincing evidence and whether those findings support the trial court's conclusion that grounds for termination exist pursuant to N.C. Gen.Stat. § 7B-1111." In re C.W. & J.W., 182 N.C.App. 214, 219, 641 S.E.2d 725, 729 (2007) (citation omitted).
If the trial court determines that a ground for termination exists, it then conducts a disposition hearing, to determine whether termination is in the best interest of the child. N.C. Gen.Stat. § 7B-1110(a)(2007). The standard for appellate review of the trial court's decision to terminate parental rights is abuse of discretion. In re Brim, 139 N.C.App. 733, 745, 535 S.E.2d 367, 374 (2000).
A trial court may terminate parental rights upon finding
[t]hat the parent is incapable of providing for the proper care and supervision of the juvenile, such that the juvenile is a dependent juvenile within the meaning of G.S. 7B-101, and that there is a reasonable probability that such incapability will continue for the foreseeable future. Incapability under this subdivision may be the result of substance abuse, mental retardation, mental illness, organic brain syndrome, or any other cause or condition that renders the parent unable or unavailable to parent the juvenile and the parent lacks an appropriate alternative child care arrangement.
N.C. Gen.Stat. § 7B-1111(a)(6) (2007).
First, Respondent argues that there was no evidence that she had a mental or other incapability. We note that the statute provides that incapability may be the result of substance abuse or mental illness. N.C. Gen.Stat. § 7B-1111(a)(6) (2007). In this case, there was evidence presented that Respondent had a history of substance abuse and mental illness.
Respondent also contends that several of the trial court's findings of fact are not supported by the evidence. The trial court made the following pertinent findings of fact:
9. Respondent mother has an extensive history of substance abuse.

*716 10. Respondent mother admitted and this Court finds that Respondent mother sold drugs from the age of eighteen (18) to the age of twenty-three (23).
....
13. Respondent mother was convicted of possession of illegal drugs with intent to manufacture, sell and deliver.
14. Respondent mother was incarcerated on April 29, 2008, and she remains incarcerated to date. Her release date is August 8, 2009.
15. After the juveniles were ordered into OCDSS custody, Respondent mother was ordered to participate in Family Treatment Court, a court which attempts to help parents recover from drug addictions so that they may be reunited with their children. She did not comply with the requirements of Family Treatment Court and was therefore terminated.
16. Five months after the beginning of her current incarceration, Respondent mother began participating in a program offered to inmates which is called the "Latch" program. Her children had been in DSS custody for over a year (15 months) before Respondent-Mother began this treatment. By participating in this program, Respondent mother has made efforts to improve herself. Respondent mother claims that upon her release, she will continue her substance abuse treatment.
17. During the course of OCDSS involvement, Respondent mother did not follow a case plan which would have supported a plan of reunification. She failed to make scheduled appointments and it was difficult to stay in touch with her by telephone or otherwise.
18. Respondent mother has a criminal history, which includes charges and convictions related to the use and sale of drugs.
19. Throughout the course of the lives of the juveniles, they have been left in the care of family members without any information regarding Respondent-Mother's whereabouts or return. The current caretakers of the juveniles have been in their lives since birth.
....
21. Respondent mother is incapable of parenting her children. Her incapability is likely to continue for the foreseeable future.
22. Her drug use and addiction interferes with her ability to parent her children. Her drug use and addiction has been long term, and her self-reported commitment to treatment has just recently occurred. She has not proven that she will maintain this commitment after her release from incarceration, but even if she does maintain her commitment to treatment, she will need a substantial and indefinite amount of time to address her addictions sufficiently to be able to parent the minor children. The needs of the children cannot wait.
23. OCDSS has met their burden of proof and the facts upon which the court bases this order are proven by clear, cogent and convincing evidence.
Of the above-cited findings, Respondent challenges only findings of fact 9, 19, 21, 22, and 23. Respondent had an extensive history of substance abuse, as well as an extensive criminal history related to the use and sale of drugs. The evidence also indicated that Respondent's substance abuse and criminal activity interfered with her ability to parent the children or to follow the case plan recommended by DSS. The DSS social worker testified about the difficulties she had contacting Respondent. In fact, the social worker was never able to meet with Respondent after Respondent failed to report for a scheduled meeting. The social worker testified that Respondent very briefly attempted to comply with her case plan. Under the case plan, Respondent was required to attend parenting classes, submit to random drug screens, participate in mental health treatment, maintain stable housing and employment, and comply with probation and the court system. Respondent last saw the children in February 2008. At the time of the termination hearing, Respondent was incarcerated for violating her probation. During her incarceration, Respondent had not written to inquire about the children.
A careful review of the record shows that the challenged findings of fact are supported by the evidence. The remaining findings cited above are unchallenged by Respondent. *717 Findings of fact that are not challenged on appeal are deemed supported by the evidence and are binding upon this Court. In re Padgett, 156 N.C.App. 644, 648, 577 S.E.2d 337, 340 (2003).
Respondent further contends that DSS failed to prove, and the trial court failed to conclude, that she lacked an alternative childcare arrangement. She cites her testimony that the people with whom she left the children were the same people that DSS proposed as adoptive parents. On this basis, Respondent argues she offered an alternative childcare arrangement, and the children do not meet the statutory definition for dependence. We agree that the trial court did not make a finding nor conclude as a matter of law that Respondent lacked an adequate childcare arrangement.
For a trial court to terminate parental rights, "[s]ection 7B-1111(a)(6) requires that in addition to a parent having a condition which renders her unable or unavailable to parent the juvenile, the parent also must have no appropriate alternative child care arrangement in order to terminate parental rights. Absent such a finding of fact, the order does not support the conclusion of law that sufficient grounds exist pursuant to section 7B1111(a)(6) to terminate respondent's parental rights." In re C.N.C.B., ___ N.C.App. ___, 678 S.E.2d 240, 243 (2009) (Emphasis added).
In the case before us, the trial court states in finding number 19 above that the children have been left in the care of family members, including the current ones who have been in the children's lives "since birth". The trial court makes additional findings of fact regarding Respondent's substance abuse and treatment and about Respondent's inability to parent the children. The trial court however does not make any findings of fact which directly address whether Respondent lacked an appropriate alternative childcare arrangement. Accordingly, we reverse and remand for further findings of fact on this issue.
Lastly, Respondent argues that the trial court violated her rights and committed reversible error by failing to ensure that the children had proper guardian ad litem (GAL) representation throughout every critical stage of the proceeding. Anne Scaff was appointed as the children's GAL. However, Scaff resigned approximately one year before the 19 March 2009 termination hearing. Therefore, Respondent contends that the children did not have proper GAL representation, acting on their behalf and performing the duties required by N.C. Gen.Stat. § 7B-601 (2007), at each of the three termination hearings.
The 20 April 2009 order terminating Respondent's parental rights is the only order currently before this Court on appeal. By order filed on 19 March 2009, Kristen Wicher was appointed as the children's GAL. Therefore, the children were represented by a GAL at the 19 March 2009 termination hearing. We find that any alleged violation of N.C. Gen.Stat. § 7B-601(a) (2007), with respect to the prior termination hearings, may not be used to challenge the 17 April 2009 order. See In re O.C., 171 N.C. App. 457, 615 S.E.2d 391 (2005) (holding an order terminating parental rights should be affirmed when the children were represented by a GAL at the termination hearing but were unrepresented during prior hearings not on direct appeal). Accordingly, this assignment of error is overruled.
Reversed and remanded in part; and Affirmed in part.
Judges GEER and HUNTER, JR. concur.
NOTES
[1] To protect their privacy, all minors are referred to by their initials in this opinion.