IN THE MATTER OF: L.H., A Minor Child

No. COA10-523

(Filed 15 March 2011)

**1. Termination of Parental Rights— grounds—failure to offer alternative placement for minor child**

The trial court did not err by concluding that grounds existed under N.C.G.S. § 7B-1111(a)(6) to terminate respondent father's parental rights. The trial court's finding that respondent had not offered an alternative placement for the minor child was sufficient, in conjunction with the undisputed determination that respondent father lacked the capacity to care for the minor child, to support the court's conclusion.

**2. Termination of Parental Rights— improper combining of dispositional hearing and Rule 60(b)(2) motion—best interests of child**

The trial court's disposition and order related to the N.C.G.S. § 1A-1, Rule 60(b)(2) motion were reversed because the trial court combined the Rule 60(b)(2) hearing with what was essentially a new dispositional hearing without proper notice and concluded that it would still find that termination was in the best interests of the minor child even in the absence of the maternal grandmother. The case was remanded for a new dispositional

hearing to determine whether termination of respondent father's parental rights was in the minor child's best interest.

Appeal by respondent from order entered 2 February 2010 by Judge Timothy I. Finan in Wayne County District Court. Heard in the Court of Appeals 7 September 2010.

*Baddour, Parker & Hine, P.C., by James W. Spicer, III, for petitioner-appellee.*

*Windy H. Rose for respondent-appellant.*

*Penry Riemann PLLC, by Neil A. Riemann, for guardian ad litem.*

GEER, Judge.

Respondent father appeals from the order terminating his parental rights to his son, L.H. ("Luke").[1] On appeal, respondent father does not dispute that he is incapable of caring for his son. He argues, however, that the trial court erred in determining that he lacked an appropriate alternative child care arrangement and in subsequently concluding that grounds, N.C. Gen. Stat. § 7B-1111(a)(6) (2009) (dependency), existed to terminate his parental rights.[2]

After this matter was on appeal, respondent father filed a Rule 60(b)(2) motion following the procedure set out in *Bell v. Martin,* 43 N.C. App. 134, 142, 258 S.E.2d 403, 409 (1979), *rev'd on other grounds,* 299 N.C. 715, 264 S.E.2d 101 (1980). In that motion, respondent father pointed out that, in the disposition phase of the proceedings, the trial court had relied heavily on Luke's bond with his maternal grandmother and the plan that she would adopt Luke in reaching the court's decision that termination of parental rights was in Luke's best interests. The Rule 60(b)(2) motion asked that the trial court set aside its termination of parental rights order because Luke's guardian ad litem had since filed a motion for review asserting that while Luke was living with his maternal grandmother, he was living in an abusive environment.

The trial court held a hearing on the motion in conjunction with a review hearing and filed an order indicating that it would deny the

---

1. The pseudonym "Luke" is used throughout this opinion to protect the minor's privacy and for ease of reading.

2. Respondent mother has not challenged the termination of her parental rights and is not a party to this appeal.

motion because (1) the trial court would still find that grounds existed to terminate respondents' parental rights, and (2) respondents had failed to present evidence that it was not in Luke's best interests not to terminate those rights. The issues before this Court are whether the trial court erred in terminating respondent father's parental rights in the initial order and, also, whether the trial court erred in determining that the Rule 60(b)(2) motion should be denied.

We affirm the trial court's decision that grounds existed to terminate respondent father's parental rights. The trial court's finding that respondent father had not offered an alternative placement for Luke is sufficient, in conjunction with the undisputed determination that respondent father lacked the capacity to care for Luke, to support the court's conclusion that grounds existed under N.C. Gen. Stat. § 7B-1111(a)(6).

We must, however, reverse the disposition and the order as to the Rule 60(b)(2) motion because the trial court combined the Rule 60(b)(2) hearing with what was essentially a new dispositional hearing and concluded that it would still find that termination was in the best interests of Luke even in the absence of the maternal grandmother. The trial court lacked jurisdiction to conduct a new dispositional hearing while this matter was on appeal, and the record contains no indication that the parties received proper notice that the trial court would be conducting a new dispositional hearing. We, therefore, remand for a new dispositional hearing to determine whether termination of respondent father's parental rights is in Luke's best interest.

## Facts

On 3 April 2008, the Wayne County Department of Social Services ("DSS") was contacted shortly after Luke's birth because the hospital staff was concerned that his mother was unable to care for him. Hospital staff informed DSS that respondent mother was 20 years old and mentally retarded, that respondent father was 17 years old and mentally retarded, and that respondent mother lived with her mother, who was respondent mother's legal guardian.

DSS social worker Tammy Mathis went to the hospital to investigate the report. Ms. Mathis spoke with respondent mother, respondent father, and Luke's maternal grandmother and developed a safety plan for Luke. The plan established that Luke would stay in the care of his maternal grandmother and that his maternal grandmother would supervise respondent mother's contact with Luke.

**IN RE L.H.**

[210 N.C. App. 355 (2011)]

On 14 January 2009, DSS filed a juvenile petition alleging that Luke was a dependent juvenile. DSS further alleged that both respondent mother and respondent father agreed to have the maternal grandmother pursue guardianship of Luke. On 26 March 2009, the trial court filed an order finding that (1) respondent mother admitted that, at the time of the filing of the petition, Luke was a dependent juvenile, (2) respondent father admitted he was unable to care for Luke, and (3) respondent father's mother, the paternal grandmother, was not willing to have Luke live with her. The trial court adjudicated Luke a dependent juvenile and ordered continued placement of Luke in the home of the maternal grandmother.

After a review hearing on 23 April 2009, the trial court found that DSS had attempted to work with respondent parents, but neither parent had the ability to parent Luke. The trial court conducted a permanency planning hearing on 6 August 2009 and entered an order on 26 August 2009 finding that respondent parents were both mentally challenged; that DSS and the guardian ad litem recommended that the plan for Luke be adoption; that the maternal grandmother "is willing and anxious to adopt [Luke] if [Luke] is free for adoption"; that neither respondent mother nor respondent father is able to care for Luke; that the paternal grandmother was unable to care for Luke at that time; and that DSS had taken reasonable steps to attempt to reunite Luke with a parent, but was unable to do so because of the mental condition of respondent parents. The trial court then ordered that the permanent plan be termination of parental rights and adoption.

On 10 September 2009, DSS filed a petition to terminate respondent parents' parental rights based on N.C. Gen. Stat. § 7B-1111(a)(6) in that respondent mother and respondent father were incapable of providing care and supervision for Luke such that Luke was a dependent juvenile. The trial court held a hearing on the termination petition on 10 December 2009. By order filed 2 February 2010, the trial court made the following pertinent findings of fact:

4.  That the Department of Social Services was contacted about this juvenile while the juvenile was in the hospital after his birth. An investigation ensued and the Department of Social Services made a plan for the safety for [sic] the juvenile, and that plan was placement of the juvenile with a relative.

5.  That after investigation, the Department of Social Services received input from both parents and on its own, placed the juvenile with . . . the maternal grandmother.

6. That the mother's plan had been to take the juvenile home to her mother's house, but not necessarily place the child in the custody of her mother, [the maternal grandmother].

7. That neither parent has offered an alternative placement for the juvenile.

8. That it was the plan of [DSS] that placed the juvenile with a relative, the maternal grandmother, not the plan of the parents.

. . . .

13. That in an order of the Court entered on February 26, 2009, and signed on March 24, 2009, the mother of the juvenile admitted that at the time of the filing of the Petition, the juvenile was a dependent juvenile and that the father of the juvenile admitted that he is unable to care for the juvenile and that his mother, the paternal grandmother is unwilling to have the juvenile live with her. The Court also found that the juvenile is a dependent juvenile within the meaning of the North Carolina General Statutes and adjudicated the juvenile a dependent juvenile. Custody of the juvenile was placed with [DSS] and [DSS] was authorized to continue placement of the juvenile in the home of the maternal grandmother . . . .

. . . .

21. That the Court received, without objection, a document from Dr. Muthiah K. Sabanayagam of East Carolina Psychiatric Consultants concerning the father . . . . [Respondent father's] diagnosis includes Bipolar Disorder I, severe mixed with questionable psychotic features, Attention Deficit Hyperactivity Disorder; Oppositional Defiant Disorder; Moderate Mental Retardation; Acquired microcephaly; severe adoptive difficulties, behavioral difficulties and poor problem solving. It is the opinion of Dr. M. K. Sabanayagam that [respondent father] "Is not capable of parenting a child . . . [and] . . . should not have independent visitation or the permission to take the child ou[t] of the legal custodian's care independently".

22. That the Court concurs with the opinion of Dr. M. K. Sabanayagam and so finds.

23. That the Court received, without objection, a letter dated August 3, 2008, concerning the mother . . . from Dr. Scott Allen, Ph.D. licensed psychologist with Waynesborough

Psychological Services, PLLC. Dr. Allen found that [respondent mother] is mentally retarded and is obviously mentally delayed. Her full scale IQ was 53, placing her in the 0.1 per centile rank of the standardization sample an[d] within the mild range of mental retardation. Dr. Scott Allen feels that there are concerns for the safety of the juvenile based on the mother's limited intellectual functioning and limited judgement and insight. He does not feel that [respondent mother] would be able to adequately care for the juvenile independently. The Court concurs in the opinion of Dr. Scott Allen and so finds.

. . . .

25. That the grounds to terminate the parental rights of the parents of the juvenile are that the parents of the juvenile are incapable of providing the proper care and supervision of the juvenile such that the juvenile is a dependent juvenile within the meaning of the North Carolina General Statutes 7B-101 and that there is reasonable probability that such incapability will continue for the foreseeable future.

Based on these findings, the trial court concluded that grounds existed to terminate the parental rights of respondent parents.

The trial court's order contained further findings related to Luke's best interests. The court found that Luke was placed at birth with the maternal grandmother pursuant to a DSS safety plan. The trial court repeatedly authorized continued placement of Luke with the maternal grandmother. Ultimately, following the permanency planning hearing, the trial court found that the maternal grandmother was a fit and proper person to care for Luke and established a permanent plan of termination of parental rights and adoption.

The trial court then found that the maternal grandmother was not motivated by financial incentive, "but has acted and continues to act in the best interest of the juvenile and has provided good care for the juvenile." The court continued: "[A] loving bond exists between [the maternal grandmother] and the juvenile and the juvenile is in a stable and loving home with [the maternal grandmother], who is meeting his emotional and physical needs. The juvenile treats [the maternal grandmother] as his parent and treats his birth mother as a sibling or someone with whom to play." The court also noted that respondent mother desired that Luke continue to live with the maternal grandmother. Finally, the trial court found that termination of parental rights would allow the permanent plan of adoption to proceed.

IN RE L.H.

[210 N.C. App. 355 (2011)]

Based on these findings, the trial court determined that termination of parental rights was in Luke's best interests. Accordingly, both parents' rights were terminated. The order also directed that the permanent plan of adoption proceed. Respondent father timely appealed the order to this Court.

While this appeal was pending, respondent father filed a motion with the trial court pursuant to Rule 60(b)(2), seeking relief from the termination of parental rights order based on newly discovered evidence. Respondent father reported to the trial court that Luke's guardian ad litem had filed a motion for review alleging that Luke was in an abusive situation. Respondent father's motion alleged that (1) Luke was living with the maternal grandmother and nine other persons in a three bedroom home, (2) the maternal grandmother had neglected respondent mother's medical needs and emotionally abused her, (3) the maternal grandmother was leaving Luke in the care of his maternal aunt for a significant amount of time so that she could gamble at an internet store, and (4) the maternal aunt had claimed that Luke actually lived with respondent mother in one room and respondent mother was acting as his primary caregiver. According to respondent father's motion, an adult protective services report had been filed against the maternal grandmother and, as a result, respondent mother had been removed from her home. Luke in turn had been placed in foster care.

Because this matter was already pending on appeal, respondent father asked the trial court pursuant to *Bell* to indicate how it would rule on the motion if the current appeal were not pending. He asked that the trial court set aside the order terminating his parental rights and grant him a new hearing with the trial court taking additional testimony. On 7 September 2010, respondent father filed a notice to delay consideration of appeal pending the trial court's entry of an order regarding the Rule 60(b)(2) motion. This Court allowed the notice to delay on 22 September 2010.

On 18 November 2010, the trial court held a hearing on the Rule 60(b)(2) motion in conjunction with a review hearing and later entered an order on 4 January 2010. With respect to the Rule 60(b)(2) motion, the trial court did not address the specific allegations in the motion regarding the maternal grandmother; did not address whether information relied upon in the motion constituted newly discovered evidence; and did not address whether presentation of that evidence would have affected the trial court's decision in the initial termination of parental rights order.

**IN RE L.H.**

[210 N.C. App. 355 (2011)]

Instead, the trial court noted that the placement with the maternal grandmother "has disrupted" and found:

13. That if the appeal were not pending, the Court would still find that grounds clearly exist to terminate the parental rights of the parents of the juvenile.

14. That the Court would consider not terminating the parental rights of the parents of the juvenile based on the best interest of the juvenile, if evidence by the parents had so indicated, but the evidence did not so indicate.

15. That the Court finds no basis to grant the Rule 60(b)(2) Motion.

Based on these findings, the trial court concluded that the Rule 60(b)(2) motion should be denied and stated that it would not be inclined to set aside the order terminating respondent parents' parental rights. The court further concluded that the best interests of Luke would be served by continuing custody with DSS "pursuant to the terms and conditions of the previous order entered herein except as specifically modified by this order." That order was then forwarded to this Court.

<u>Discussion</u>

Termination of parental rights involves a two-stage process. *In re Blackburn*, 142 N.C. App. 607, 610, 543 S.E.2d 906, 908 (2001). At the adjudicatory stage, "the petitioner has the burden of establishing by clear and convincing evidence that at least one of the statutory grounds listed in N.C. Gen. Stat. § 7B-1111 exists." *In re Anderson*, 151 N.C. App. 94, 97, 564 S.E.2d 599, 602 (2002). Findings of fact supported by competent evidence are binding on appeal even if evidence has been presented contradicting those findings. *In re N.B., I.B., A.F.*, 195 N.C. App. 113, 116, 670 S.E.2d 923, 925 (2009). "If the trial court determines that grounds for termination exist, it proceeds to the dispositional stage, and must consider whether terminating parental rights is in the best interests of the child." *In re Anderson*, 151 N.C. App. at 98, 564 S.E.2d at 602. The trial court's decision to terminate parental rights is reviewed under an abuse of discretion standard. *In re Nesbitt*, 147 N.C. App. 349, 352, 555 S.E.2d 659, 662 (2001).

I

[1] With respect to the adjudication phase, respondent father challenges the trial court's determination that grounds existed to terminate his

parental rights under N.C. Gen. Stat. § 7B-1111(a)(6). That subsection provides that a parent's rights may be terminated upon a finding

> [t]hat the parent is incapable of providing for the proper care and supervision of the juvenile, such that the juvenile is a dependent juvenile within the meaning of G.S. 7B-101, and that there is a reasonable probability that such incapability will continue for the foreseeable future. Incapability under this subdivision may be the result of substance abuse, mental retardation, mental illness, organic brain syndrome, or any other cause or condition that renders the parent unable or unavailable to parent the juvenile and the parent lacks an appropriate alternative child care arrangement.

*Id.*

N.C. Gen. Stat. § 7B-101(9) (2009) defines a "[d]ependent juvenile" as "[a] juvenile in need of assistance or placement because the juvenile has no parent, guardian, or custodian responsible for the juvenile's care or supervision or whose parent, guardian, or custodian is unable to provide for the care or supervision and lacks an appropriate alternative child care arrangement." In determining whether a juvenile is dependent, the trial court "must address both (1) the parent's ability to provide care or supervision, and (2) the availability to the parent of alternative child care arrangements." *In re P.M.*, 169 N.C. App. 423, 427, 610 S.E.2d 403, 406 (2005).

Respondent father does not dispute that he is unable to parent, but contends that the trial court erred in finding that DSS, and not he, placed Luke with the maternal grandmother. Respondent father further argues that, in any event, the trial court's finding that "neither parent has offered an alternative placement for the juvenile" is not sufficient to establish that he lacks an appropriate alternative child care arrangement. According to respondent father, whether DSS arranged the placement of Luke with his maternal grandmother "should not have a bearing on whether there was an appropriate, alternative child care arrangement."

The trial court specifically found that DSS went to the hospital upon Luke's birth and made a safety plan, which provided that Luke would be placed with a relative. DSS then, according to the trial court, "on its own, placed the juvenile with . . . the maternal grandmother." After finding that neither parent had offered an alternative placement for Luke, the court found that "it was the plan of [DSS]

that placed the juvenile with a relative, the maternal grandmother, not the plan of the parents."

These findings of fact were supported by the testimony of DSS social worker Tammy Mathis, who explained that upon being contacted by the hospital, DSS formulated Luke's safety plan, which provided that Luke would stay in the care of his maternal grandmother and that the maternal grandmother would supervise respondent mother's contact with Luke. When asked, "wasn't it the Department that came up with [the maternal grandmother] as the placement for [Luke,]" Mathis responded, "Yes." Mathis also testified that respondent father "didn't have any problem with the child going home with [the maternal grandmother]" and that respondent father did not interfere with that placement. Mathis further testified that respondent mother and respondent father confirmed DSS's recommendation and that neither had suggested or made a recommendation regarding any other placement. Thus, DSS made alternative child care arrangements and respondent father consented to those arrangements. The trial court's findings are, therefore, fully supported by the evidence.

Those findings are adequate to support the trial court's determination that respondent father lacked an appropriate alternative child care arrangement. Respondent father appears to be arguing that if a relative exists who is willing to take responsibility for a child, then the parent does not lack an alternative child care arrangement. According to respondent father, the statute does not require that a parent arrange for the alternative placement rather than DSS.

Our courts have, however, consistently held that in order for a parent to have an appropriate alternative child care arrangement, the parent must have taken some action to identify viable alternatives. For example, in *In re D.J.D., D.M.D., S.J.D., J.M.D.*, 171 N.C. App. 230, 239, 615 S.E.2d 26, 32 (2005), this Court explained:

> The evidence supports the conclusion that these children are dependent since their parents were neither able to care for them nor did they suggest appropriate alternate placements. Respondent contends that he did propose an alternate placement; *i.e.*, his aunt, whom he brought to DSS's attention at the termination hearing, but with whom he acknowledged that he had not spoken in five years. There was no evidence she was willing or able to care for these children.

IN RE L.H.

[210 N.C. App. 355 (2011)]

*See also In re J.D.L.*, 199 N.C. App. 182, 189, 681 S.E.2d 485, 490 (2009) ("A conclusion that a juvenile is dependent may be supported by evidence that *the parent is unable* to care for the child or *to suggest* an appropriate alternative placement for the child." (emphasis added)); *In re J.L.*, 183 N.C. App. 126, 130, 643 S.E.2d 604, 606 (2007) (holding that "to adjudicate [the child] as dependent, the trial court was required to find that respondent, [the child's] father, was either unable to care for [the child] himself, or was unable to secure an alternative child care arrangement").

Here, the trial court's findings—supported by adequate evidence—establish both that respondent father was unable to care for Luke and that he did not suggest an appropriate alternative placement. Under the above cases, these findings are sufficient to support the existence of the dependency ground.

In arguing otherwise, respondent father primarily relies upon unpublished decisions. Although those decisions are not in any event controlling, none of them actually hold that the identification by DSS on its own of a relative willing to care for a child negates any finding that the parent lacks an appropriate alternative care arrangement. Respondent father also cites *In re N.B., I.B., & A.F.*, 200 N.C. App. 773, 778-79, 688 S.E.2d 713, 717 (2009), in which this court reversed a termination of parental rights based on dependency. The mother argued that she did not lack an appropriate childcare arrangement because she had left her children with the same family members that DSS was proposing as adoptive parents. *Id.* at 778, 688 S.E.2d at 717. This Court did not specifically address the mother's argument, but rather reversed because the trial court did "not make any findings of fact which directly address whether Respondent lacked an appropriate alternative childcare arrangement." *Id.* at 779, 688 S.E.2d at 717. In contrast, in this case, the trial court specifically made a finding of fact that neither parent offered an alternative childcare arrangement.

None of the four opinions cited by respondent father supports his argument that he had an appropriate alternative childcare arrangement because DSS placed Luke with his maternal grandmother. This Court has never held that if DSS places the child with a relative, an appropriate alternative childcare arrangement exists, and we decline to do so here.

As the guardian ad litem points out, the fact that Luke was placed with his maternal grandmother cannot mean, without anything more, that respondent father had an alternative care arrangement. If this

**IN RE L.H.**

[210 N.C. App. 355 (2011)]

were the case, the requirement would be meaningless because, in the words of the guardian ad litem, "our courts will always do their best to ensure that someone" cares for children. Having an appropriate alternative childcare arrangement means that the parent himself must take some steps to suggest a childcare arrangement—it is not enough that the parent merely goes along with a plan created by DSS. *See, e.g., In re Clark*, 151 N.C. App. 286, 289-90, 565 S.E.2d 245, 248 (holding that trial court erred in concluding that incarcerated father was incapable of providing for his daughter's care when father provided DSS with names of several close relatives who might be "willing and able" to care for his daughter until his release from prison, but DSS never contacted those individuals and instead placed child with maternal cousin), *disc. review denied*, 356 N.C. 302, 570 S.E.2d 501 (2002).

Respondent father next argues that his mother, the paternal grandmother, "had consistently offered to be a placement resource for the minor child." The record, however, contains evidence that the paternal grandmother is not able to care for Luke in addition to her son, including findings of fact in prior orders and the paternal grandmother's own statement to that effect in open court.

The findings of the trial court demonstrate that DSS made the alternative child care arrangement for Luke. The trial court was permitted to find, as it did, that respondent father did not suggest any alternative placement plan, but rather merely went along with the arrangement made by DSS. The findings of the trial court support the conclusion that Luke is dependent. We, therefore, hold that the trial court properly found that grounds existed under N.C. Gen. Stat. § 7B-1111(a)(6) to terminate respondent father's parental rights.

II

[2] In his appellant's brief, respondent father made no challenge to the court's conclusion of law that termination of his parental rights was in Luke's best interest. Respondent father's Rule 60(b)(2) motion, however, relates directly to the dispositional phase of the termination of parental rights proceeding.

The filing of an appeal generally removes jurisdiction from the trial court, yet the trial court does "retain[] limited jurisdiction to indicate how it is inclined to rule on a Rule 60(b) motion." *Hall v. Cohen*, 177 N.C. App. 456, 458, 628 S.E.2d 469, 471 (2006). Under *Bell*, 43 N.C. App. at 142, 258 S.E.2d at 409, this Court set out a procedure

**IN RE L.H.**

[210 N.C. App. 355 (2011)]

regarding the proper filing and consideration of Rule 60(b) motions during the pendency of an appeal:

> It appears to us that the better practice is to allow the trial court to consider a Rule 60(b) motion filed while the appeal is pending for the limited purpose of.indicating, by a proper entry in the record, how it would be inclined to rule on the motion were the appeal not pending. At the time the motion is made in the lower court the movant should notify the appellate court so that it may delay consideration of the appeal until the trial court has considered the 60(b) motion. Upon an indication of favoring the motion, appellant would be in position to move the appellate court to remand to the trial court for judgment on the motion and the proceedings would thereafter continue until a final, appealable judgment is rendered. An indication by the trial court that it would deny the motion would be considered binding on that court and appellant could then request appellate court review of the lower court's action. This procedure allows the trial court to rule in the first instance on the Rule 60(b) motion and permits the appellate court to review the trial court's decision on such motion at the same time it considers other assignments of error.

Under *Bell*, therefore, this Court has jurisdiction to review whether the trial court properly concluded that respondent father's Rule 60(b)(2) motion should be denied.

Under Rule 60(b)(2), a trial court may set aside an order or judgment based on "[n]ewly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." "In order for evidence to be 'newly discovered evidence' under [Rule 60(b)(2)], it must have been in existence at the time of the trial, and not discoverable through due diligence." *Broadbent v. Allison*, 176 N.C. App. 359, 364, 626 S.E.2d 758, 763 (2006), *disc. review denied*, 361 N.C. 350, 644 S.E.2d 4 (2007).

"Generally, a motion for setting aside a judgment pursuant to Rule 60(b) is addressed to the sound discretion of the trial court, and the standard of appellate review is limited to determining whether the court abused its discretion." *McLean v. Mechanic*, 116 N.C. App. 271, 276, 447 S.E.2d 459, 462 (1994), *disc. review denied*, 339 N.C. 738, 454 S.E.2d 653, 654 (1995). Abuse of discretion is shown only when the challenged actions are manifestly unsupported by reason. *Woods v. Billy's Auto.*, 174 N.C. App. 808, 811, 622 S.E.2d 193, 196 (2005).

**IN RE L.H.**

[210 N.C. App. 355 (2011)]

Here, the Rule 60(b)(2) motion was based on the guardian ad litem's filing of a motion for review indicating that the maternal grandmother was causing Luke to live in an abusive environment. The trial court should have first determined whether any evidence of abusive conditions was in existence at the time of the termination of parental rights hearing and whether information regarding those conditions could have been discovered by respondent father with due diligence. We note that the trial court joined its hearing on this motion with the review hearing and, therefore, evidence regarding the maternal grandmother should have been squarely before the court. While the trial court incorporated by reference into its order two court summaries, it did not attach them to the order and it made no findings indicating what information those summaries contained. As a result, this Court does not know what evidence the trial court had before it.

The only allusion to the Rule 60(b)(2) motion's allegations is the finding that "subsequently, the placement of the juvenile with the maternal grandmother has disrupted." The trial court never addressed the reason for the "disruption" or whether the behavior leading to that disruption had existed at the time of the termination of parental rights hearing. Similarly, the trial court apparently never considered whether the information about the maternal grandmother could have been discovered by respondent father earlier.[3]

The trial court nonetheless found that no basis existed for granting the Rule 60(b)(2) motion. As for the adjudication portion of the order, the court found: "That if the appeal were not pending, the Court would still find that grounds clearly exist to terminate the parental rights of the parents of the juvenile." We agree that the trial court did not abuse its discretion as to this portion of the termination of parental rights order. The conditions experienced by Luke while living with his maternal grandmother were irrelevant to whether grounds existed under N.C. Gen. Stat. § 7B-1111(a)(6) to terminate respondent father's parental rights.

As for the dispositional or "best interests" portion of the order, the trial court found: "That the Court would consider not terminating the parental rights of the parents of the juvenile based on the best interest of the juvenile, if evidence by the parents had so indicated,

---

3. It would seem, however, that the failure of DSS and the guardian ad litem to uncover this information by the time of the termination of parental rights hearing would preclude a finding of a lack of due diligence by the mentally retarded respondent father.

but the evidence did not so indicate." Earlier in the order, the court had found that all parties were given an opportunity to present evidence. Although these findings are somewhat cryptic, they imply that the trial court recognized that the underpinnings for its best interests determination in the termination of parental rights order—adoption by a loving maternal grandmother—were gone, but that it was still finding that termination was in Luke's best interests because respondent parents had not presented, at the Rule 60(b)(2) and review hearing, any new best interests evidence.

The trial court's basis for denying the Rule 60(b)(2) motion appears to mistake the court's role at this stage. It was respondent father's responsibility to present evidence supporting his claim that newly discovered evidence warranted setting aside the termination of parental rights order and holding a new hearing. Any new best interests evidence would then be presented at the new hearing. The trial court improperly merged the Rule 60(b)(2) and review hearing with what was essentially a dispositional hearing.

The parties presumably would have come to the hearing prepared to present evidence as to why the Rule 60(b)(2) motion should or should not be granted. By determining that, even without consideration of the maternal grandmother, it would still make the same best interests determination because of respondents' lack of evidence, the trial court effectively held a dispositional hearing without providing adequate notice to the parties. The trial court may not hold a termination of parental rights dispositional hearing while only noticing a Rule 60(b)(2) or review hearing. *Cf. In re D.C., C.C.*, 183 N.C. App. 344, 356, 644 S.E.2d 640, 646-47 (2007) (reversing and remanding order of guardianship "[b]ecause N.C. Gen. Stat. §§ 7B-507 and 907 do not permit the trial court to enter a permanent plan for a juvenile during disposition, respondent did not have statutorily required notice that the trial court would consider a permanent plan for [juvenile], and the trial court did not make findings mandated by sections 7B-907(b), (c), and (f) . . .").

In addition, the trial court lacked jurisdiction to revisit the best interests determination while this case was on appeal. *See* N.C. Gen. Stat. § 7B-1003 (2009). It had authority to enter an order setting out whether it believed that the newly discovered evidence warranted a new hearing. If the trial court believed that the evidence regarding the maternal grandmother was sufficient to warrant allowing respondent parents another opportunity to argue that termination was not in

the best interests of Luke—as the court's finding seems to indicate—then the court should have indicated that it would grant the Rule 60(b)(2) motion. Such a ruling would not require that the trial court ultimately decide that termination was not in Luke's best interests. The ruling would simply lead to a new dispositional hearing at which the parties would again present evidence regarding Luke's best interests.

The approach followed by the trial court in this case is also inconsistent with the requirements for the disposition phase of a termination of parental rights hearing. Our legislature has determined that if a trial court determines that one or more grounds for termination exist, then in order to decide whether it is in the child's best interests to terminate the parental rights, the court "shall consider" the following factors: (1) the age of the juvenile; (2) the likelihood of adoption of the juvenile; (3) whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile; (4) the bond between the juvenile and the parent; (5) the quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement; and (6) any relevant consideration. N.C. Gen. Stat. § 7B-1110(a) (2009). The trial court in this case has only considered these factors as they relate to the maternal grandmother.

While that fact would not be an issue if any problems with the maternal grandmother's conduct post-dated the termination of parental rights order, we cannot reach the same conclusion if the trial court had before it, at the Rule 60(b)(2) hearing, evidence that existed at the time of the termination of parental rights hearing that negated the findings in the original order. If that is the case, then there has never been any valid consideration of Luke's best interests. The Rule 60(b)(2) order contains no consideration of these factors in the absence of the maternal grandmother.

We could simply reverse the Rule 60(b)(2) order and remand for further findings of fact and conclusions law, but, under the circumstances and given the findings in that order, such an approach would not advance Luke's need for permanency at the earliest possible point. It appears to us that the approach that best serves Luke's interests is to reverse the dispositional portion of the termination of parental rights order as well as the Rule 60(b)(2) portion of the 4 January 2011 order and remand for a new dispositional hearing as to whether termination of respondent father's parental rights is in Luke's best interests.

Affirmed in part; reversed and remanded in part.

Judges McGEE and BRYANT concur.