An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-524

NORTH CAROLINA COURT OF APPEALS

Filed: 7 October 2014

IN THE MATTER OF:

                                    Guilford County
                                    No. 12 J 75
L.D.S.


Appeal by respondent from order entered 10 February 2014 by Judge Tabatha Holliday in Guilford County District Court. Heard in the Court of Appeals 9 September 2014.

> *Mercedes O. Chut for petitioner-appellee Guilford County Department of Social Services.*
>
> *Robert W. Ewing for respondent-appellant.*
>
> *Parker Poe Adams & Bernstein LLP, by William L. Esser IV, for Guardian ad Litem.*


STEELMAN, Judge.


Where father failed to identify alternative child care arrangements for L.S. during the time of father's incarceration, the trial court did not err in terminating his parental rights.

## I. Factual and Procedural Background

On 3 July 2012, Guilford County Department of Social Services ("DSS") filed a petition alleging that L.S. and his

sister J.S. were neglected and dependent juveniles.[1] At the time the petition was filed, G.S. ("father") was incarcerated with a projected release date of 16 November 2014. Most of the allegations in the petition pertained to the conduct of the juveniles' mother, T.A. ("mother"). DSS alleged that mother had an extensive history of being a victim of domestic violence, as well as mental health and substance abuse issues. DSS further alleged that mother violated safety agreements put in place by the investigating social worker; failed to keep appointments for substance abuse and mental health assessments; failed to submit to drug screens; and had threatened to take the children out of state. DSS obtained non-secure custody of the juveniles.

On 3 October 2012, the trial court adjudicated the juveniles as neglected and dependent. The trial court granted custody of the juveniles to DSS and authorized their placement in the home of L.S.'s paternal grandmother ("K.S."). Father was ordered to enter into and comply with a service agreement with DSS. On 7 December 2012, the juveniles were placed with L.S.'s paternal aunt and uncle ("Mr. and Mrs. W.") after their placement with K.S. was disrupted due to her medical issues and the juveniles' behavioral issues.

---

[1] Father is not the father of J.S. and the instant appeal pertains only to L.S.

On 4 June 2013, the trial court set a permanent plan for the juveniles of adoption with a concurrent plan of reunification. The court noted that father had failed to comply with his prison service agreement and had failed to maintain contact with the social worker. The court ordered DSS to file a petition to terminate parental rights within sixty days. The trial court later changed the permanent plan for the juveniles to adoption.

On 15 July 2013, DSS filed a petition to terminate father's and mother's parental rights. DSS alleged that grounds existed to terminate their parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(1) (neglect), (2) (failure to make reasonable progress), (3) (failure to pay a reasonable portion of the cost of care for the juveniles) and (6) (dependency). On 10 February 2014, the trial court entered an order terminating father's and mother's parental rights.

Father appeals.

## II. Arguments

Father argues that the trial court erred by concluding that grounds existed to terminate his parental rights. We disagree.

N.C. Gen. Stat. § 7B-1111 sets out the statutory grounds for terminating parental rights. A finding of any one of the

separately enumerated grounds is sufficient to support termination. *In re Taylor*, 97 N.C. App. 57, 64, 387 S.E.2d 230, 233-34 (1990). "The standard of appellate review is whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence and whether the findings of fact support the conclusions of law." *In re D.J.D.*, 171 N.C. App. 230, 238, 615 S.E.2d 26, 32 (2005) (citing *In re Huff*, 140 N.C. App. 288, 291, 536 S.E.2d 838, 840 (2000), *disc. review denied, appeal dismissed*, 353 N.C. 374, 547 S.E.2d 9 (2001)).

In the instant case, the trial court concluded that grounds existed to terminate father's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(6). Pursuant to this subsection, the trial court may terminate a parent's parental rights where:

> the parent is incapable of providing for the proper care and supervision of the juvenile, such that the juvenile is a dependent juvenile within the meaning of G.S. 7B-101, and that there is a reasonable probability that such incapability will continue for the foreseeable future. Incapability under this subdivision may be the result of substance abuse, mental retardation, mental illness, organic brain syndrome, or any other cause or condition that renders the parent unable or unavailable to parent the juvenile and the parent lacks an appropriate alternative child care arrangement.

N.C. Gen. Stat. § 7B-1111(a)(6) (2013). A dependent juvenile is defined as "[a] juvenile in need of assistance or placement

because (i) the juvenile has no parent, guardian, or custodian responsible for the juvenile's care or supervision or (ii) the juvenile's parent, guardian, or custodian is unable to provide for the juvenile's care or supervision and lacks an appropriate alternative child care arrangement." N.C. Gen. Stat. § 7B-101(9) (2013). "In determining whether a juvenile is dependent, 'the trial court must address both (1) the parent's ability to provide care or supervision, and (2) the availability to the parent of alternative child care arrangements.'" *In re B.M.*, 183 N.C. App. 84, 90, 643 S.E.2d 644, 648 (2007) (quoting *In re P.M.*, 169 N.C. App. 423, 427, 610 S.E.2d 403, 406 (2005)).

Here, the trial court found as fact that father's "incarceration renders him incapable of, and unavailable for, providing for the proper care and supervision of [L.S.]." The trial court further found that father "lacks an appropriate alternative child care arrangement." Specifically, the trial court made a finding that:

> 24. . . . The only alternative child care arrangement proposed by [father] was [father's] mother, [K.S.]. The Department initially placed the juveniles with [K.S.]; however, the placement subsequently disrupted due to [K.S.'s] health issues. Although the juveniles are currently placed with [father's] sister and her husband [Mr. and Mrs. W.], neither [father] nor the mother proposed them as a placement.

> Rather, [father's] sister and her husband volunteered to have the juveniles placed with them.

Father does not challenge the court's finding that he was incapable of providing proper care and supervision to the juvenile. Father does argue, however, that the trial court erred by finding and concluding that he lacked an appropriate alternative caregiver. Father claims that it was K.S.'s idea that the children be placed with Mr. and Mrs. W., and notes that he and his mother have been "communicating and working together throughout this case." Father intimates that he should receive credit for suggesting Mr. and Mrs. W. as appropriate alternative caregivers. Father further contends that he does not lack an appropriate alternative caregiver because Mr. and Mrs. W. have been willing and able caregivers for L.S. throughout this case. We are not persuaded.

"Our courts have. . . consistently held that in order for a parent to have an appropriate alternative child care arrangement, the parent *must have taken some action to identify viable alternatives*." *In re L.H.*, 210 N.C. App. 355, 364, 708 S.E.2d 191, 197 (2011) (emphasis added). "Having an appropriate alternative childcare arrangement means that the parent himself must take some steps to suggest a childcare arrangement — it is

not enough that the parent merely goes along with a plan created by DSS." *Id*. at 366, 708 S.E.2d at 198.

In this case, the record demonstrates that father did not identify Mr. and Mrs. W. as potential caregivers, nor did he suggest an appropriate alternative placement. Additionally, assuming *arguendo* that K.S. suggested Mr. and Mrs. W. as a placement, there is no evidence she was acting on father's behalf or as his proxy. Consequently, we hold that the trial court did not err by concluding that grounds existed pursuant to N.C. Gen. Stat. § 7B-1111(a)(6) to terminate father's parental rights.

Father additionally argues that the trial court erred by concluding that grounds existed pursuant to N.C. Gen. Stat. § 7B-1111(a)(1), (2), and (3) to terminate his parental rights. However, because we conclude that grounds existed pursuant to N.C. Gen. Stat. § 7B-1111(a)(6) to support the trial court's order, we need not address the remaining grounds found by the trial court to support termination. *Taylor*, 97 N.C. App. at 64, 387 S.E.2d at 233-34.

AFFIRMED.

Judges CALABRIA and McCULLOUGH concur.

Report per Rule 30(e).