STEPHENS, Judge.
Respondent-father C.T. ("Mr. T.") appeals from the trial court's order terminating his parental rights to his minor children N.T. ("Nancy") and S.T. ("Steven").[1] Respondent-father C.W. ("Mr.W.") appeals from the trial court's order terminating his parental rights to his minor child N.D. ("Nathan"). We affirm.
I. Background
On 3 July 2012, the Forsyth County Department of Social Services ("DSS") filed petitions alleging that Nancy, Steven, and Nathan (collectively, "the children") were neglected juveniles. The children, their mother, and their fathers had a prior history with DSS and the children had previously been in DSS custody. On this occasion, DSS received a report that Nancy had pushed Nathan through a wall and that the children's mother had beaten Nathan with an electrical cord. DSS obtained nonsecure custody of the children. On 24 October 2012, the district court entered an order adjudicating the children as neglected juveniles.
At the time the petitions were filed, Mr. T. was incarcerated. His anticipated release date from prison is 2 July 2018, at which time Nancy will have reached the age of majority and Steven will be sixteen-and-a-half years old. The district court ordered Mr. T. to obtain psychological services and participate in parenting classes. He was also permitted to correspond with his children. Mr. T. regularly sent Nancy and Steven cards and letters. He also spoke on the telephone with Nancy after receiving approval to do so from the court and her therapist. However, Mr. T. was unable to comply with other aspects of the court's order due to his incarceration.
The district court ordered Mr. W. to establish a case plan and a visitation plan with DSS, complete a substance abuse assessment, and comply with any recommendations, participate in parenting classes, and submit to random drug tests as requested by DSS. However, Mr. W. failed to comply with any part of the court's order because he had outstanding warrants for his arrest and wanted to avoid incarceration. As a result, on 13 November 2013, the district court entered an order which ceased reunification efforts with Mr. W.
On 9 April 2014, DSS filed a petition to terminate the parental rights of the children's mother, Mr. T. and Mr. W. On 8 September 2014, the district court entered an order terminating the parental rights of all three parents. Mr. T.'s parental rights to Nancy and Steven were terminated pursuant to N.C. Gen.Stat. § 7B-1111(a)(2) (failure to make reasonable progress) and (a)(6) (dependency). Mr. W.'s parental rights to Nathan were terminated pursuant to N.C. Gen.Stat. § 7B-1111(a)(1) (neglect), (a)(2) (failure to make reasonable progress), and (a)(7) (abandonment). The court concluded that termination was in the best interests of all of the children. Mr. T. and Mr. W. appeal.[2]
II. Standard of Review
"The standard of review in termination of parental rights cases is whether the findings of fact are supported by clear, cogent and convincing evidence and whether these findings, in turn, support the conclusions of law." In re Shepard,162 N.C.App. 215, 221, 591 S.E.2d 1, 6 (citation and internal quotation marks omitted), disc. review denied sub nom. In re D.S.,358 N.C. 543, 599 S.E.2d 42 (2004). We then consider whether, based on the grounds found for termination, the district court abused its discretion in finding termination to be in the best interest of the child. Id.at 222, 591 S.E.2d at 6.
III. Mr. T.'s Appeal
Mr. T. argues that the district court erred by concluding that grounds existed to terminate his parental rights and that termination was in the best interests of Nancy and Steven. We disagree.
A. Grounds for Termination
The court concluded that Mr. T.'s rights were subject to termination because Nancy and Steven were dependent juveniles. Pursuant to N.C. Gen.Stat. § 7B-1111(a)(6), a district court may terminate parental rights upon finding
[t]hat the parent is incapable of providing for the proper care and supervision of the juvenile, such that the juvenile is a dependent juvenile within the meaning of [section] 7B101, and that there is a reasonable probability that such incapability will continue for the foreseeable future. Incapability under this subdivision may be the result of substance abuse, mental retardation, mental illness, organic brain syndrome, or any other cause or condition that renders the parent unable or unavailable to parent the juvenile and the parent lacks an appropriate alternative child care arrangement.
N.C. Gen.Stat. § 7B-1111(a)(6) (2013). When determining whether a juvenile is dependent, a "court must address both (1) the parent's ability to provide care or supervision, and (2) the availability to the parent of alternative child care arrangements." In re P.M.,169 N.C.App. 423, 427, 610 S.E.2d 403, 406 (2005).
In this case, the court found that Mr. T. was "incapable of providing for the proper care and supervision of the children, [Nancy] and [Steven], such that the children are dependent juveniles ... and that there is a reasonable probability that such incapability will continue for the foreseeable future." Mr. T. contends that this finding is erroneous because he "was unable to provide for the proper care and supervision of Nancy and Steven due solely to his incarceration," rather than due to one of the specific conditions listed in section 7B-1111(a)(6). However, this Court has held that an extended period of incarceration "is clearly sufficient to constitute a condition that rendered [a parent] unable or unavailable to parent [a minor child]." In re L.R.S.,--- N .C.App. ----, ----. 764 S.E.2d 908, 911 (2014). Since Mr. T. will be incarcerated until at least July 2018, the district court properly found that he would be incapable of parenting his children for the foreseeable future.
Defendant further argues that the court made insufficient findings to establish that he lacked an appropriate alternative child care arrangement. The court found:
Mr. [T.] has previously maintained that he has family members who can care for [Nancy] and [Steven] while he is incarcerated. He has consistently named his sister in Washington State as his choice to care for his children. Mr. [T.]'s sister in Washington State is not in a position to care for [Nancy] and [Steven] and she declined to participate in an ICPC home study.
Mr. T. contends that this finding of fact demonstrates that he provided names of family members who were willing to care for his children and, thus, that he had an appropriate alternative child care arrangement. However, this Court has "consistently held that in order for a parent to have an appropriate alternative child care arrangement, the parent must have taken some action to identify viablealternatives." In re L.H.,210 N.C.App. 355, 364, 708 S.E.2d 191, 197 (2011) (emphasis added). Accordingly, to establish the existence of an alternative care arrangement, a parent must do more than simply name a proposed caregiver. The parent must also provide some evidence that the alternative they suggest is ready, willing, and able to accept responsibility for the minor children. See In re D.J.D.,171 N.C.App. 230, 239, 615 S.E.2d 26, 32 (2005) (rejecting the respondent's proposed alternative placement because "[t]here was no evidence she was willing or able to care for these children").
Mr. T. concedes that his sister in Washington was properly excluded as a possible alternative caregiver. Moreover, there is no evidence that he provided DSS with any other viable alternatives. The social worker assigned to the children testified that Mr. T. had only given her "contact information for his mom and his sister." Mr. T.'s mother had informed the social worker "that she couldn't take care of [Mr. T.'s children]. She couldn't provide for them, because of her situation, herself." For other family members, Mr. T. did not provide actual contact information. Instead, he only told DSS the "city and state" in which his relatives resided. This information was insufficient to establish these other relatives as viable alternative placements. See id.
In addition, Mr. T.'s testimony regarding why he initially identified his sister in Washington as his preferred alternative placement strongly suggests that his remaining siblings were not viable placements:
I have got it on-well, when this started, I had seven other brothers and sisters. Two of my youngest brothers have passed away, so I have five other brothers and sisters, and [my sister in Washington is] the matriarch, I guess you could say, of the family, you know, and so she's the most responsible of us. She's the oldest of us. She took care of us when we were young, and she stopped having children. My younger brothers and sisters, they are all-my two younger brothers, both of them are getting ready to have a child with their spouses, and my two younger sisters are both pregnant right now. So [she] was the best option as a placement for the kids, and we were all, you know, wanting that to happen.
This evidence demonstrates that the court considered the only potentially viable alternative child care arrangement proposed by Mr. T. As Mr. T. concedes, the court properly found that this proposed placement was not appropriate.
Because clear, cogent, and convincing evidence supports the findings of fact regarding Mr. T.'s inability to parent and his lack of an alternative child care arrangement, the court properly concluded that Mr. T.'s parental rights were subject to termination on the ground of dependency. As a result, it is unnecessary to address Mr. T.'s argument regarding the remaining ground for termination found by the district court. See In re Taylor,97 N .C.App. 57, 64, 387 S.E.2d 230, 233-34 (1990) (holding that the finding of any one of the enumerated grounds is sufficient to support termination).
B. Best Interests
Mr. T. argues that the district court abused its discretion by concluding that termination was in the best interests of Nancy and Steven. "Once a district court has found grounds for termination of parental rights under North Carolina General Statute § 7B-1111(a), it must then 'determine whether terminating the parent's rights is in the juvenile's best interest.' " In re H.D.,No. COA14-589, --- N.C.App. ----, ----, --- S.E.2d ----, ---- (2015) (quoting N.C. Gen.Stat. § 7B-1110(a) (2013) ).
In each case, the court shall consider the following criteria and make written findings regarding the following that are relevant:
(1) The age of the juvenile.
(2) The likelihood of adoption of the juvenile.
(3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
(4) The bond between the juvenile and the parent.
(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
(6) Any relevant consideration.
N.C. Gen.Stat. § 7B-1110(a). Mr. T. concedes that the order includes findings of fact regarding each relevant statutory factor. However, he contends that some of these findings are not supported by clear, cogent, and convincing evidence.
With respect to Nancy, Mr. T. first challenges the findings of fact that her likelihood of adoption is good, that she is bonded with a foster parent, and that she wants to be adopted by that foster parent. At the termination hearing, Nancy's social worker testified that Nancy had a good relationship with her foster mother and was bonded to her. Nancy's therapist also testified that the foster mother was interested in being a permanent home for Nancy and that Nancy desired to live with the foster mother until she reached adulthood. Finally, Nancy's guardian ad litem("GAL") testified that Nancy calls her foster mother "mom," that she wanted to be adopted by her foster mother, and that Nancy and her foster mother had a good bond. This testimony amply supports the challenged findings.
Mr. T. also challenges the district court's findings that Nancy has little or no bond with him. He argues that this finding was contrary to evidence which showed he regularly corresponded with Nancy via letters and cards and also spoke with her once or twice a month by telephone. However, the court's findings reflect that it considered this limited contact and nonetheless found that it did "not show the [c]ourt significant bonding." Additionally, Nancy's GAL testified that Nancy wished to be adopted by her foster mother, even though she understood Mr. T.'s parental rights would need to be terminated in order for the adoption to occur. In light of Nancy's desire to be adopted by her foster mother, her overall sporadic contact with Mr. T., and other testimony regarding their relationship presented during the termination hearing, there was sufficient evidence to support the court's finding that Nancy had little bond with Mr. T.
With respect to Steven, Mr. T. challenges the district court's findings that Steven's likelihood of adoption was good and that Steven also had "little to no bond" with Mr. T. At the termination hearing, Steven's social worker testified that his maternal uncle had been identified as an adoptive placement, that he was interested in adopting the children, and that a home study had been completed. In addition, the evidence also demonstrated that Steven's bond with Mr. T. was not significant. Mr. T. testified that he sent cards and letters to Steven but had not spoken to Steven since 2012 and had not seen Steven since 2010. He also acknowledged that he had been incarcerated for the majority of Steven's life. This evidence was sufficient to support the challenged findings of fact.
We conclude that the court made sufficient findings, supported by competent evidence, regarding all relevant factors in N.C. Gen.Stat. § 7B-1110(a). Based upon these findings, we discern no abuse of discretion in the court's determination that termination of Mr. T.'s parental rights was in Nancy's and Steven's best interests.
IV. Mr. W.'s Appeal
Counsel for Mr. W. has filed a no-merit brief on his behalf pursuant to N.C.R.App. P. 3.1(d) stating that after a "conscientious and thorough review of the Record on Appeal and all materials in the underlying case files," counsel "has concluded that this appeal presents no issue of merit on which to base an argument for relief." Counsel asks this Court to conduct an independent review of the record for possible error. Counsel has also demonstrated that she has advised Mr. W. of his right to file written arguments with this Court and provided him with the documents necessary to do so. A reasonable time has passed, and Mr. W. has not filed his own written arguments with this Court.
Consistent with the requirements of Rule 3.1(d), counsel directs our attention to potential issues with the district court's adjudication of grounds to terminate Mr. W.'s parental rights and its conclusion that termination was in Nathan's best interests. However, counsel acknowledges that these issues do not provide a meritorious basis for appeal.
After careful review, we are unable to find any possible prejudicial error by the district court. The termination order includes sufficient findings of fact, supported by clear, cogent, and convincing evidence, to conclude that at least one statutory ground for termination of Mr. W.'s rights existed. See Taylor,97 N.C.App. at 64, 387 S.E.2d at 233-34. Moreover, the court made appropriate findings on each of the relevant dispositional factors and did not abuse its discretion in assessing Nathan's best interests. SeeN.C. Gen.Stat. § 7B-1110(a).
V. Conclusion
In sum, as to each father, the district court's findings of fact, which were supported by competent evidence, in turn support the court's conclusions that Mr. T.'s and Mr. W's parental rights were subject to termination. Further, the court did not abuse its discretion by concluding that termination was in the children's best interests. Accordingly, the termination order is
AFFIRMED.
Chief Judge MCGEE and Judge DAVIS concur.
Report per Rule 30(e).
Opinion
Appeal by Respondent-fathers from order entered 8 September 2014 by Judge Laurie Hutchins in Forsyth County District Court. Heard in the Court of Appeals 8 June 2015.

Pseudonyms are used to protect the identity of the minor children and for ease of reading.

The children's mother did not appeal from the termination order.