610 S.E.2d 403 (2005)
In the Matter of P.M.
No. COA04-346.
Court of Appeals of North Carolina.
April 5, 2005.
E.B. Borden Parker, Goldsboro, for petitioner-appellee.
Susan J. Hall, Fayetteville, for respondent-appellant.
*404 GEER, Judge.
Respondent mother appeals from an order of the trial court adjudicating her son P.M. to be neglected and dependent. We hold that the trial court's findings of fact support its conclusion that P.M. is neglected, but that they are insufficient to establish dependency because the court failed to address the availability of appropriate alternative childcare arrangements. We, therefore, affirm in part, reverse in part, and remand for further proceedings.
In a non-jury adjudication of abuse, neglect, and dependency, "the trial court's findings of fact supported by clear and convincing competent evidence are deemed conclusive, even where some evidence supports contrary findings." In re Helms, 127 N.C.App. 505, 511, 491 S.E.2d 672, 676 (1997). This Court reviews the trial court's conclusions of law to determine whether they are supported by the findings of fact. Id.
An appellate court's review of the sufficiency of the evidence is limited to those findings of fact specifically assigned as error. See Wade v. Wade, 72 N.C.App. 372, 375-76, 325 S.E.2d 260, 266 ("A single assignment [of error] generally challenging the sufficiency of the evidence to support numerous findings of fact ... is broadside and ineffective" under N.C.R.App. P. 10.), disc. review denied, 313 N.C. 612, 330 S.E.2d 616 (1985). Since respondent specifically assigned error to only three of the trial court's findings of fact, the remaining findings of fact are binding on this Court. Koufman v. Koufman, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991) ("Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal.").
Even as to those three findings, respondent has failed to specifically argue in her brief that they were unsupported by evidence. She has, therefore, abandoned her *405 appeal of those findings of fact. N.C.R.App. P. 28(b)(6) ("Assignments of error not set out in the appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned."). Accordingly, our review in this case is limited to determining whether the trial court's findings of fact support its conclusions of law that P.M. is a neglected and dependent child.

Facts
Respondent is the mother of P.M., who was born 6 June 2003. P.M.'s father was, at the time of the hearing, incarcerated in the Department of Correction and facing additional charges. Respondent is also the mother of four other children, including three daughters and one son. In other proceedings, respondent was found to have neglected those four children.[1] The daughters are now in the custody of their paternal grandparents and the son, who has a different father, is in the custody of his paternal grandmother.
Prior to the birth of P.M., P.M.'s father sexually abused one of respondent's daughters after respondent allowed him to be in the presence of that daughter, in violation of a safety plan with the Department of Social Services ("DSS") that prohibited the father from having contact with that daughter. A psychologist who evaluated respondent after that event concluded that respondent had failed to take responsibility for the consequences of her failing to care for her four children.
On 9 July 2003, a month after the birth of P.M., DSS filed a petition alleging that P.M. was neglected and dependent based on the prior adjudications as to respondent's other children and her current lack of insight into the harm suffered by those children. Custody, however, remained with respondent after she and DSS entered into a protection plan providing that respondent's mother would always be in the home with respondent and P.M. in order to provide supervision of the care of P.M. Following a pre-adjudication conference, the trial court entered an order reporting that DSS had requested that custody of P.M. be placed with respondent's mother. After finding "[t]hat a protection plan had been previously agreed to by [respondent] wherein she would have [her mother] in her presence when the juvenile was in her presence," the trial court concluded "[t]hat the best interest of the juvenile will be promoted and served by leaving custody of the juvenile with [respondent] but the plan should be followed." (Emphasis added.)
Subsequently, respondent's mother left respondent's home. In violation of the plan and the prior order, respondent did not notify DSS or make arrangements for any other person to be in the home to assist her and monitor her care of P.M. As a result, DSS prepared a report recommending that the court consider "changing custody and placement of [P.M.] if [respondent] continues to violate the court orders."
On 4 September 2003, Judge R. Les Turner conducted an initial adjudication hearing attended by both respondent and P.M's father. On 3 October 2003, the trial court entered an order that adjudicated P.M. as dependent and neglected. The court placed custody of P.M. with DSS, but authorized DSS "to leave the juvenile in the home of the mother provided that an appropriate caretaker will be in the home of the mother at all times to monitor the care that the mother gives the juvenile." The court required that this "caretaker" must be "someone approved by the Wayne County Department of Social Services." Respondent mother has appealed from this order.

Neglect
Respondent first challenges the trial court's determination that P.M. is a neglected child. Respondent points out that the trial court found "[t]hat no one testified that the juvenile was not healthy and no one testified that the juvenile appeared not to be well cared for." The court nonetheless found that P.M. was neglected because "he resides in the home where siblings and half-siblings have been determined to be abused and or neglected...."
*406 N.C. Gen.Stat. § 7B-101(15) (2003) defines a neglected juvenile:
A juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law. In determining whether a juvenile is a neglected juvenile, it is relevant whether that juvenile lives in a home where another juvenile has died as a result of suspected abuse or neglect or lives in a home where another juvenile has been subjected to abuse or neglect by an adult who regularly lives in the home.

(Emphasis added.) Respondent argues that the italicized language does not apply because P.M.'s father, who committed the abuse, does not reside in the home with P.M. Respondent, however, overlooks the fact that a court determined that she neglected her four other children. Accordingly, P.M. "lives in a home where another juvenile has been subjected to ... neglect by an adult who regularly lives in the home." Id.
Respondent also argues that the prior adjudications are insufficient to support a conclusion of neglect. In considering the identically-worded predecessor statute, this Court held, however, that while this language regarding neglect of other children "does not mandate" a conclusion of neglect, the trial judge has "discretion in determining the weight to be given such evidence." In re Nicholson, 114 N.C.App. 91, 94, 440 S.E.2d 852, 854 (1994). Since the statutory definition of a neglected child includes living with a person who neglected other children and since this Court has held that the weight to be given that factor is a question for the trial court, the court, in this case, was permitted, although not required, to conclude that P.M. was neglected. In In re McLean, 135 N.C.App. 387, 396, 521 S.E.2d 121, 127 (1999), this Court explained: "In cases of this sort, the decision of the trial court must of necessity be predictive in nature, as the trial court must assess whether there is a substantial risk of future abuse or neglect of a child based on the historical facts of the case."
Here, as the trial court found, the historical facts of the case included the fact that respondent had twice violated court-ordered protection plans with DSS-once after her four other children had already been removed from her custody-and was failing to take responsibility for harm that befell her children as a result of her conduct. We hold that these findings of fact taken in their entirety are sufficient to support the conclusion that P.M. is a neglected child. See In re E.N.S., 164 N.C.App. 146, 150, 595 S.E.2d 167, 170 (affirming conclusion of neglect "based primarily on events that took place before [the child's] birth, in particular, the circumstances regarding respondent's oldest child being adjudicated neglected and dependent" and a subsequent failure to demonstrate stability), disc. review denied, 359 N.C. 189, 606 S.E.2d 903 (2004).

Dependency
The mother also contends that the trial court erred in concluding that P.M. is a dependent child. A dependent child is defined as "[a] juvenile in need of assistance or placement because... [the juvenile's] parent, guardian, or custodian is unable to provide for the care or supervision and lacks an appropriate alternative child care arrangement." N.C. Gen.Stat. § 7B-101(9) (2003). Under this definition, the trial court must address both (1) the parent's ability to provide care or supervision, and (2) the availability to the parent of alternative child care arrangements.
We hold the trial court did not make sufficient findings to support its conclusion that P.M. was a dependent child. In this case, the trial court found that: "the juvenile is dependent based on the fact that he does not have a parent who is capable of properly caring for him in that his father is incarcerated and his mother does not comply with Court ordered protection plans set out for the protection of the juvenile." Although a failure to comply with court-ordered protection plans may establish an inability to care for or supervise a child if the plans were adopted to ensure proper care and supervision *407 of the child, the trial court never addressed the second prong of the dependency definition. The trial court made no finding that respondent lacked "an appropriate alternative child care arrangement." We observe that an earlier order in this case stated that respondent's mother "was willing to take custody of the juvenile to keep the juvenile from going into foster care."
Accordingly, we affirm the trial court's conclusion that P.M. is a neglected child. We reverse, however, as to the conclusion that P.M. is a dependent child and remand for further findings of fact on that issue.
Affirmed in part, reversed in part, and remanded.
Judges TIMMONS-GOODSON and TYSON concur.
NOTES
[1] Although the record contains extensive evidence regarding the abuse and neglect of the children, the trial court did not make any findings of fact regarding that evidence.