643 S.E.2d 604 (2007)
In the Matter of J.L., Minor Child.
No. COA06-1501.
Court of Appeals of North Carolina.
May 1, 2007.
Womble Carlyle Sandridge & Rice, PLLC, by Murray C. Greason, III, and Julie B. Bradburn, Raleigh, for Guardian ad Litem.
Geannine M. Boyette, Wilmington, for respondent father.
*605 BRYANT, Judge.
Respondent father (respondent) appeals adjudication and disposition orders with respect to his minor child, J.L.[1]
J.L. was born in 2005. J.L. was conceived when his mother, C.L., was fifteen and respondent father was twenty-five years old. C.L. had been living with respondent and respondent's mother since February 2005 because C.L.'s parents had left the state, and their whereabouts were unknown. Respondent and his mother were present at the hospital when J.L. was born, and respondent signed the birth certificate acknowledging that he was J.L.'s father.
Shortly after J.L.'s birth, the New Hanover Department of Social Services, (DSS) received a report regarding J.L. and initiated an investigation as to whether C.L., being a minor herself, was neglected and dependent. During this initial investigation, respondent told a DSS social worker that he wanted J.L. to be placed with him. In addition, both respondent's mother and respondent's sister expressed their desire to have J.L. placed with them.
Upon C.L.'s discharge from the hospital, she was placed in foster care. J.L. remained hospitalized because he required surgery to correct a birth defect in which his intestines were externalized. On 20 September 2005, J.L. was discharged from the hospital and went to live with C.L. in foster care. After a dispute with her foster mother and two attempts to run away, C.L. was placed in a new foster home separate from J.L. On 9 November 2005, C.L. ran away and did not return. Shortly thereafter, J.L. was removed from his foster home due to a report of inappropriate discipline.
On 21 November 2005, DSS filed a petition alleging that J.L. was dependent and moved for non-secure custody of J.L. The trial court held a hearing on the petition on 23 November 2005 at which respondent father and his counsel appeared. Following the hearing, the trial court entered an order in which it found that C.L. had run away and could not be found. The trial court found that respondent had requested that J.L. be placed with respondent, J.L.'s paternal aunt or J.L.'s grandmother. In addition, the trial court granted DSS's request for non-secure custody and gave DSS authority to place J.L. with the paternal aunt or grandmother upon completion of favorable home studies.
On 1 and 8 December 2005, the trial court conducted hearings on the issue of DSS's continued non-secure custody of J.L. In its order from the 8 December hearing, the trial court found that C.L.'s whereabouts were still unknown. The trial court also found that the home study had not been completed on the paternal aunt, but ordered DSS to facilitate visits between J.L. and the paternal aunt and grandmother. The trial court further ordered that respondent was to have "no visitation for [respondent] at this time pending further hearing."
Following an adjudication hearing on 2 March 2006, the trial court again found that C.L.'s whereabouts remained unknown. However, with respect to respondent father, the trial court made the following findings:
5. That [respondent] is an adult of twenty seven years of age. That at conception of [J.L.], [C.L.] was fifteen years of age. That for some time prior to [J.L.]'s birth and at his birth, [C.L.] resided with [respondent] in the home of [respondent's] mother. . . . That [respondent] signed [J.L.]'s birth certificate as father. That DNA paternity testing is to be conducted next week to determine the paternity of [J.L.].
The trial court adjudicated J.L. as dependent and concluded that J.L. had been abandoned by C.L. In addition, the trial court continued non-secure custody with DSS and again ordered that respondent have no visitation with J.L.
On 1 through 3 May 2006, the trial court held disposition hearings. During these hearings, DSS foster care worker, Nicole Burroughs, testified that respondent had been paying child support for J.L., was current in that support obligation and had been providing J.L. with health insurance. Following the hearings, the trial court again found that C.L.'s whereabouts were unknown *606 and that J.L. was doing well in his foster placement. The trial court made the following findings with respect to respondent:
6. That prior Orders of this Court have prohibited visitation or contact by [respondent] with [C.L.] or with [J.L.] as [respondent] committed statutory rape of [C.L.] which resulted in conception. From [J.L.]'s birth, [respondent] and his family have acknowledged obligation to support [J.L.] and have expressed the desire to have custody of [J.L.]. The family has provided bags of clothing and a car seat for [J.L.]. Visitation with [J.L.] by [paternal aunt and grandmother], has been authorized and has taken place in [paternal aunt's] home. That [paternal aunt and grandmother's] care of [J.L.] during visitation has been appropriate and [J.L.] has been well cared for during visitation.
. . .
9. That it is appropriate at this time to allow the Department of Social Services to cease efforts at reunification with [respondent]. . . .
Based on its findings, the trial court maintained custody with DSS but ordered DSS to "make its best efforts to locate [C.L.]" so that she could be placed in foster care with J.L. and have an opportunity to parent J.L. The trial court further ordered the guardian ad litem to continue to investigate the possible placement of J.L. with his paternal aunt. While the trial court also increased the aunt's visitation with J.L., the trial court also continued its prior order that respondent was to have no visitation.
Respondent father argues the trial court erred in: (I) adjudicating J.L. to be a dependent child, (II) ordering reunification efforts with J.L. to cease, and (III) ordering that there should be no visitation between respondent father and J.L. For the reasons stated herein, we reverse the trial court's decision and remand for additional findings of fact.

I
In his first assignment of error, respondent asserts that the trial court's adjudication of J.L. as a dependent juvenile was not supported by the findings of fact. We agree.
"The allegations in a petition alleging abuse, neglect, or dependency shall be proved by clear and convincing evidence." N.C. Gen.Stat. § 7B-805 (2005). The adjudicatory order shall be in writing and shall contain appropriate findings of fact and conclusions of law. N.C. Gen.Stat. § 7B-807 (2005). When a trial court is required to make findings of fact, it must "find the facts specially." N.C. Gen.Stat. § 1A-1, Rule 52(a)(1) (2005). This Court's review of a trial court's conclusions of law is limited to whether they are supported by the findings of fact. In re Helms, 127 N.C.App. 505, 511, 491 S.E.2d 672, 676 (1997) (citing In re Montgomery, 311 N.C. 101, 111, 316 S.E.2d 246, 253 (1984) (limiting review of conclusions of law to whether they are supported by findings of fact)).
Respondent contends that the trial court's findings with respect to him are insufficient to support the trial court's conclusion that J.L. is a dependent juvenile. N.C. Gen.Stat. § 7B-101(9) defines "dependent juvenile" as follows:
A juvenile in need of assistance or placement because the juvenile has no parent, guardian, or custodian responsible for the juvenile's care or supervision or whose parent, guardian, or custodian is unable to provide for the care or supervision and lacks an appropriate alternative child care arrangement.
N.C. Gen.Stat. § 7B-101(9) (2005). Accordingly, to adjudicate J.L. as dependent, the trial court was required to find that respondent, J.L.'s father, was either unable to care for J.L. himself, or was unable to secure an alternative child care arrangement. See In re P.M., 169 N.C.App. 423, 428, 610 S.E.2d 403, 406 (2005) (reversal of trial court where there was no finding that respondent lacked "an appropriate child care arrangement"). However, aside from acknowledging that respondent had signed the birth certificate and that a paternity test was to be conducted, the only findings the trial court made in the adjudication order with respect to respondent involved the respondent's age at the time of J.L.'s conception and the fact that *607 C.L. had lived with respondent prior to J.L.'s birth.
The guardian ad litem contends that such factual findings are sufficient to support a conclusion of dependency because they correspond to the elements of statutory rape under N.C. Gen.Stat. § 14-27.7A(a) ("Statutory rape or sexual offense of person who is 13, 14, or 15 years old").[2] In other words, the guardian ad litem argues that factual findings suggesting that respondent could be criminally liable for statutory rape pursuant to N.C.G.S. § 14-27.7A(a), standing alone, are sufficient to support the trial court's legal conclusion that respondent is unable to provide appropriate care for J.L. However, such an argument does not comport with the statute.
First-degree rape includes certain forms of forcible rape and statutory rape in which the victim is "under the age of 13 years and the defendant is at least 12 years old and is at least four years older than the victim." N.C. Gen.Stat. § 14-27.2(a)(1). The North Carolina legislature has specifically determined that "[u]pon conviction, a person convicted under this section [of first-degree rape] has no rights to custody of or rights of inheritance from any child born as a result of the commission of the rape, nor shall the person have any rights related to the child under Chapter 48 or Subchapter 1 of Chapter 7B of the General Statutes." N.C. Gen.Stat. § 14-27.2(c) (2005). Conversely, North Carolina General Statutes, Section 14-27.7A(a) which describes statutory rape of a person 13, 14, or 15 years old does not contain a subsection affecting rights to custody or inheritance upon conviction. See N.C.G.S. § 14-27.7A(a)(2005).
In the case sub judice, the facts as found by the trial court are not sufficient to support a finding of dependency as they do not correspond to the crime of first-degree rape. Even if respondent were eventually indicted and convicted of statutory rape under the facts as found by the trial court and pursuant to N.C. Gen.Stat. § 14-27.7A(a), such a conviction would not result in respondent losing his parental rights to J.L. under N.C.G.S. § 14-27.2(a)(1). To hold that factual findings suggesting potential criminal liability for statutory rape under N.C.G.S. § 14-27.7A(a) constitute per se inability of a parent to care for a child, is in derogation of the statute and in effect, would deprive a father of the opportunity to have his parental rights adjudicated under the specific standards and protections of the juvenile code.
Therefore, we conclude that the factual findings as to respondent are insufficient to support the trial court's conclusion that J.L. is a dependent child. Consequently, we reverse the trial court's adjudication order. Because we have concluded that the adjudication order must be reversed, we do not address respondent's contentions with respect to the subsequent disposition order.
Reversed.
Judges CALABRIA and ELMORE concur.
NOTES
[1] In order to protect the identity of the juvenile, we use initials throughout this opinion.
[2] This statute provides:

A defendant is guilty of a Class B1 felony if the defendant engages in vaginal intercourse or a sexual act with another person who is 13, 14, or 15 years old and the defendant is at least six years older than the person, except when the defendant is lawfully married to the person.
N.C. Gen.Stat. § 14-27.7A(a)(2005).