An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1414
NORTH CAROLINA COURT OF APPEALS

Filed: 20 May 2014

IN THE MATTER OF:               Randolph County
                                  Nos. 10 JA 34, 13 JA 05

K.M.C. and H.D.C., III[1]
TWO MINOR CHILDREN.

Appeal by Respondent-parents from order entered 7 October 2013 by Judge Scott C. Etheridge in Randolph County District Court. Heard in the Court of Appeals 5 May 2014.

*Erica Glass for Petitioner Randolph County Department of Social Services.*

*Sydney Batch for Respondent-mother.*

*Richard Croutharmel for Respondent-father.*

*Ellis & Winters LLP, by Lenor Marquis Segal, for Guardian ad Litem.*

STEPHENS, Judge.

*Factual and Procedural Background*

---

[1] We use initials and pseudonyms in this opinion to protect the juveniles' identities and for ease of reading.

Respondent-parents appeal from an order adjudicating their two children, K.M.C. ("Kim") and H.D.C., III ("Henry") (collectively, "the juveniles"), as neglected and dependent juveniles. Kim was born in January 2010, and Henry was born in September 2011. In October 2012, Respondent-parents, Kim, and Henry were evicted from their home in Asheboro. In December 2012, they moved into the home of the juveniles' paternal grandmother. Shortly thereafter, Respondent-father's younger brother, J.C., also moved into the paternal grandmother's home.[2] In October 2009, D.H., the younger half-brother of Respondent-father, had been adjudicated a dependent juvenile based in part on J.C.'s sexual molestation of D.H. The sexual abuse had occurred while D.H. and J.C. resided with the paternal grandmother (the mother of both boys).[3] D.H. has also alleged sexual abuse by Respondent-father.

---

[2] Some of the evidence in the record suggests that J.C. lived in a tent or trailer on the grounds of the paternal grandmother's home.

[3] D.H. was born in March 1996. It appears that J.C. was born in 1992. Thus, both D.H. and J.C. were minors during the period when the abuse occurred.

On 3 January 2013, DSS filed petitions[4] seeking adjudications that Kim and Henry were neglected and dependent because (1) the juveniles lacked stable and appropriate housing, (2) Respondent-father had untreated anger management issues, and (3) Respondent-parents both had untreated mental health issues, a history of domestic violence, and no appropriate alternative child care arrangement. The court placed the juveniles in the nonsecure custody of DSS on that date. Respondent-parents remained in the paternal grandmother's home until early June 2013 when they moved into another residence.

On 4 September 2013, the district court held an evidentiary hearing and, on 7 October 2013, entered a combined adjudication and disposition order, concluding that (1) Kim and Henry were dependent and neglected juveniles, *see* N.C. Gen. Stat. § 7B-101(9), (15) (2013), and (2) removal from the custody of Respondent-parents was in the juveniles' best interest. The court placed Kim and Henry in the custody of DSS and allowed Respondent-parents supervised visitation for a minimum of one

---

[4] On 17 March 2010, the Randolph County Department of Social Services ("DSS") had filed a petition alleging that Kim was neglected and dependent. Another petition in the case was filed on 9 June 2010, alleging Kim was neglected and dependent. After a hearing on the March 2010 petition, the court concluded that Kim was not neglected or dependent, and dismissed that petition. DSS then voluntarily dismissed the June 2010 petition.

hour per week. The court also ordered, *inter alia*, Respondent-parents to submit to random drug screens and follow through with recommended treatment in the event of a positive result. In addition, the court ordered Respondent-father to complete a sex offender assessment and follow through with any resulting recommendations. Respondent-parents appeal.

*Rule 9(b)(5) Supplement to the Record on Appeal*

On 24 February 2014, DSS and the Guardian *ad Litem* filed a joint supplement to the printed record on appeal, consisting of four consolidated orders of adjudication and disposition entered between January 2010 and October 2013 ("the supplement orders"). Respondent-parents filed objections to the supplement and moved to strike it. Those motions were referred to this panel in March 2014.

The supplement orders concern four minor children of J.C.,[5] all of whom have been removed from his custody and adjudicated dependent, abused, and/or neglected. At the adjudication

---

[5] In his testimony, Respondent-father referred to J.C. as "my brother," although the "Joint Response by Appellees to Respondent-Appellant Father's Objection to the Record Supplement" refers to J.C. as "Respondent-Appellant's Father's brother[.]" However, every other reference in the record indicates that J.C. is Respondent-father's brother, rather than his uncle.

hearing in this matter, the attorney for DSS asked the court to take judicial notice of the supplement orders. Contrary to the assertions of Respondent-parents, there was no objection by either of their attorneys when the court agreed to take judicial notice of the supplement orders.[6] A social worker from DSS then testified about the reasons for the removals and adjudications of J.C.'s children. Although nothing in the combined adjudication and disposition order regarding Kim and Henry that is the subject of this appeal references the supplement orders and they are thus irrelevant to our resolution of this appeal, they were part of the evidence before the district court at the hearing. Accordingly, we deny Respondent-parents' motions to strike.

*Discussion*

Respondent-parents argue that (1) all or portions of subparagraphs a, d, e, g, h, i, and j of the district court's finding of fact 5 are not supported by clear and convincing evidence, (2) the conclusions of law that Kim and Henry are dependent and neglected juveniles are not supported by the

---

[6] Respondent-mother's trial counsel did object to the court taking judicial notice of the entire DSS "files" on the children, but did not object when the court stated it would take judicial notice of the adjudication orders only.

court's findings of fact, and (3) certain conditions imposed by the court constituted an abuse of its discretion. We affirm in part and reverse in part.

*I. Standard of review*

"The allegations in a petition alleging that a juvenile is abused, neglected, or dependent shall be proved by clear and convincing evidence." N.C. Gen. Stat. § 7B-805 (2013). On appeal, an adjudication order is reviewed to determine "(1) whether the findings of fact are supported by clear and convincing evidence, and (2) whether the legal conclusions are supported by the findings of fact." *In re Pittman*, 149 N.C. App. 756, 763-64, 561 S.E.2d 560, 566 (citation and internal quotation marks omitted), *appeal dismissed and disc. review denied*, 356 N.C. 163, 568 S.E.2d 608-09 (2002), *cert. denied sub nom., Harris-Pittman v. Nash Cnty. Dep't of Social Servs.*, 538 U.S. 982, 155 L.E.2d 673 (2003). Findings of fact are binding "where there is some evidence to support those findings, even though the evidence might sustain findings to the contrary." *In re Montgomery,* 311 N.C. 101, 110-11, 316 S.E.2d 246, 252-53 (1984) (citation omitted). Findings of fact are also binding if an appellant does not challenge them on appeal. *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991) (citation

omitted). We review dispositions to determine whether the court abused its discretion in deciding what action is in the juvenile's best interest. *In re C.W.*, 182 N.C. App. 214, 219, 641 S.E.2d 725, 729 (2007) (citation omitted).

*II. Findings of fact*

Respondent-parents challenge all or portions of subparagraphs a,[7] d, e, f, g, h, i, and j of finding of fact 5 as not supported by clear and convincing evidence. We agree as to finding of fact 5h, but disagree regarding the remaining challenged findings of fact.

Finding of fact 5 states:

> 5. The [c]ourt finds the following facts for the purpose of adjudication:
>
> a. The minor children are neglected and dependent children.
>
> b. [Respondent-parents] were evicted from [ABC Street], Asheboro, NC.
>
> c. When [Respondent-parents] and the minor children were evicted, they ([Respondent-parents] and the minor

---

[7] Finding of fact 5a is actually a conclusion of law, and we review it as such. *See In re M.R.D.C.*, 166 N.C. App. 693, 697, 603 S.E.2d 890, 893 (2004) (holding that a finding of fact which is actually a conclusion of law is reviewed as a conclusion of law on appeal), *disc. review denied*, 359 N.C. 321, 611 S.E.2d 413 (2005); *In re R.A.H.*, 182 N.C. App. 52, 60, 641 S.E.2d 404, 409 (2007) (noting that mislabeling a finding of fact as a conclusion of law is inconsequential if the remaining findings of fact support it).

children) went to the paternal grandmother['s] . . . home for approximately four to five months before the petitions in the matter were filed.

d.  [Respondent-f]ather acknowledged that he knew that the paternal grandmother's home was an inappropriate home for the minor children.

e.  This [c]ourt adjudicated on or about October 28, 2009 that [J.C.] sexually molested the minor child [D.H.].

f.  [J.C.] was living at the paternal grandmother's home.

g.  [J.C.] had access to the minor children at the paternal grandmother's home.

h.  When [Respondent-parents] would leave the paternal grandmother's home to go [to] the store, they would leave the minor children with [J.C.].

i.  [Respondent-parents] had no other place to take the minor children after they were evicted from [ABC Street] in Asheboro, NC. [Respondent-f]ather had five to seven months to find housing other than the paternal grandmother's home. [Respondent-f]ather had ample time to find appropriate and stable housing.

j.  [J.C.] would actually play video games in the same living room while the minor children were at the paternal grandmother's home.

As for finding of fact 5d, when asked if he was "aware that [the paternal grandmother's] home was not an appropriate place

for your children[,]" Respondent-father replied, "I guess so, yeah." He also testified that he knew (1) his brother, D.H., had been removed from the paternal grandmother's custody and had not been returned and (2) DSS had recommended that the paternal grandmother's home was not an appropriate place for his children. Respondent-father further testified that he knew the children of his other brother, J.C., had been removed from J.C.'s custody before Respondent-father moved his children to his mother's residence. This evidence fully supports finding of fact 5d.

As for finding of fact 5e, the district court took judicial notice of juvenile adjudication orders pertaining to Respondent-father's relatives, including an order adjudicating his brother D.H. as neglected and dependent. That order contains a finding of fact that D.H. was sexually assaulted by J.C. This evidence fully supports finding of fact 5e.

With regard to findings of fact 5f, 5g, and 5j, Respondent-father testified that, "right before the date that the petitions in this matter" were filed, his brother J.C. "moved in after a short while" and "stayed there certain nights." Although Respondent-father testified that J.C. often "slept in a tent or his camper outside" in the yard of the paternal grandmother's

house, he also testified about watching television and playing video games with J.C. at night in the living room where Kim and Henry slept. This evidence fully supports findings of fact 5f, 5g, and 5j.

As to finding of fact 5i, Respondent-father testified that Respondent-parents could not find housing for their family anywhere other than at the home of the paternal grandmother during the period between their eviction and the filing of the petition. The supervising social worker testified that, before DSS filed the petition, Respondent-parents declined a request by DSS to move Kim and Henry to the home of the maternal grandmother. This evidence fully supports finding of fact 5i.

Regarding finding of fact 5h, our review reveals no evidence that Kim and Henry were left alone with J.C. on occasions when Respondent-parents went to the store. Because this finding of fact is not supported by any evidence in the record, we do not consider it when reviewing the court's conclusions of law.

*III. Conclusions of law*

Respondent-parents next argue that the court's conclusions of law that Kim and Henry are dependent and neglected juveniles

are not supported by the findings of fact.  We agree as to dependency, but disagree as to neglect.

A dependent juvenile is one whose "parent, guardian, or custodian is unable to provide for the care or supervision [of the juvenile] and lacks an appropriate alternative child care arrangement."  N.C. Gen. Stat. § 7B-101(9) (2013).  In determining whether a juvenile is dependent, "the trial court must address both (1) the parent's ability to provide care or supervision, and (2) the availability to the parent of alternative child care arrangements."  *In re P.M.*, 169 N.C. App. 423, 427, 610 S.E.2d 403, 406 (2005).  The court's adjudicatory findings contained in finding of fact 5 do not address the ability of the parents to provide care or supervision or the availability of alternative child care arrangements.  We thus hold the findings of facts do not support a conclusion that Kim and Henry are dependent juveniles.[8]  Accordingly, we reverse this adjudication.

A juvenile is neglected if, *inter alia*, he or she does not receive proper care, supervision, or discipline from a parent or

---

[8] We further note that, although some of the findings of fact which the court included in its dispositional determination could be construed as relating to the Respondent-parents' "ability to provide care and supervision" for the juveniles, none address the "availability . . . of alternative child care arrangements."  *See id.*

guardian; is not being provided necessary medical or remedial care; or is residing in an environment injurious to his or her welfare. N.C. Gen. Stat. § 7B-101(15). In making this determination, the district court must assess whether there is "some physical, mental, or emotional impairment of the juvenile or a substantial risk of such impairment as a consequence of the failure to provide proper care, supervision, or discipline." *In re Safriet*, 112 N.C. App. 747, 752, 436 S.E.2d 898, 901-02 (1993) (citation and internal quotation marks omitted). A court "need not wait for actual harm to occur if there is a substantial risk of harm to the child in the home." *In re T.S.*, 178 N.C. App. 110, 113, 631 S.E.2d 19, 22 (2006), *affirmed per curiam*, 361 N.C. 231, 641 S.E.2d 302 (2007).

"In determining whether a juvenile is a neglected juvenile, it is relevant whether that juvenile . . . lives in a home where another juvenile has been subjected to abuse or neglect by an adult who regularly lives in the home." N.C. Gen. Stat. § 7B-101(15).

> In considering the identically-worded predecessor statute, this Court held, . . . that while this language regarding neglect of other children does not mandate a conclusion of neglect, the trial judge has discretion in determining the weight to be given such evidence. Since the statutory definition of a neglected child includes

living with a person who neglected other children and since this Court has held that the weight to be given that factor is a question for the trial court, the court, in this case, was permitted, although not required, to conclude that P.M. was neglected. . . . In cases of this sort, the decision of the trial court must of necessity be predictive in nature, as the trial court must assess whether there is a substantial risk of future abuse or neglect of a child based on the historical facts of the case.

*In re P.M.*, 169 N.C. App. at 427, 610 S.E.2d at 406 (citations and internal quotation marks omitted). In that case, before P.M. was born,

P.M.'s father sexually abused one of [the] respondent's daughters after [the] respondent allowed him to be in the presence of that daughter, in violation of a safety plan with . . . [DSS] that prohibited the father from having contact with that daughter. A psychologist who evaluated [the] respondent after that event concluded that [the] respondent had failed to take responsibility for the consequences of her failing to care for her four children.

. . . [A] month after the birth of P.M., DSS filed a petition alleging that P.M. was neglected and dependent based on the prior adjudications as to [the] respondent's other children and her current lack of insight into the harm suffered by those children.

*Id.* at 425, 610 S.E.2d at 405. We held that "the historical facts of the case [which] included the fact that [the] respondent had twice violated court-ordered protection plans

with DSS . . . and was failing to take responsibility" were sufficient to support a conclusion of neglect. *Id.* at 427, 610 S.E.2d at 406. We see no meaningful distinction between the facts in that case and those presented here, to wit, that Respondent-parents moved their minor children into a home with J.C., a man with a history of sexually abusing his minor relatives.[9]

Respondent-father concedes that the "court here was permitted" to conclude that Kim and Henry were neglected juveniles based upon their exposure to J.C., and he further acknowledges that the court had discretion in weighing the evidence before it in reaching that conclusion. *See In re Nicholson*, 114 N.C. App. 91, 94, 440 S.E.2d 852, 854 (1994) (holding that the district court has discretion in determining the weight to be afforded to evidence of the abuse or neglect of other children). We agree and conclude that the court's findings of fact support its conclusion of law that Kim and Henry are neglected juveniles. This argument is overruled.

---

[9] We also observe that there is copious evidence in the record and in the findings of fact which the district court labeled as dispositional rather than adjudicatory regarding the paternal grandmother's refusal to believe that J.C. had abused D.H. and her denial of any responsibility in the events that led to the removal of D.H. from her custody and his eventual adjudication as a dependent juvenile.

*IV. Conditions placed on Respondent-parents*

Respondent-mother argues that the court abused its discretion by ordering her to submit to random drug screens because nothing in the record and no allegations in the petitions suggest that she has a substance abuse problem. We disagree.

In a juvenile proceeding under Chapter 7B, "the child's interest in being protected from abuse and neglect is paramount." *In re Pittman*, 149 N.C. App. at 761, 561 S.E.2d at 564. A juvenile court has the authority, if it determines that it is in the juvenile's best interest, to require a parent of a juvenile who has been adjudicated abused, neglected, or dependent to "undergo psychiatric, psychological, or other treatment or counseling directed toward remediating or remedying behaviors or conditions that led to or contributed to the juvenile's adjudication or to the court's decision to remove custody of the juvenile from the parent . . . ." N.C. Gen. Stat. § 7B-904(c) (2013). Under this grant of authority, a court may, in its discretion, order a parent to submit to a substance abuse assessment. *See In re A.S.*, 181 N.C. App. 706, 712-13, 640 S.E.2d 817, 821, *affirmed per curiam*, 361 N.C. 686, 651 S.E.2d 883 (2007). "A ruling committed to a trial court's

discretion is to be accorded great deference and will be upset only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision." *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985).

We considered and rejected Respondent-mother's argument in a recent case. In *In re A.R.*, the parents contended that the court erred by requiring them, *inter alia*, to submit to mental health assessments, substance abuse evaluations, and drug screens when the children had been removed for domestic violence and not for substance abuse or mental health reasons. __ N.C. App. __, __, 742 S.E.2d 629, 632 (2013). We disagreed, holding that imposition of these mandates "is reasonably related to aiding [the parents] in remedying the conditions which led to the children's removal; all of these requirements assist [the parents] in both understanding and resolving the possible underlying cause of [the parents]' domestic violence issues." *Id.* at __, 742 S.E.2d at 632-33.

We believe the same reasoning applies here. Respondent-parents acknowledge a history of domestic violence. Respondent-father has "an extensive history with drugs and alcohol." Respondent-mother has been diagnosed with recurrent major depression with psychotic features. All of these issues

contributed to the removal of the juveniles from Respondent-parents' custody. Drug screens and substance abuse treatment if indicated, along with mental health treatment, may assist Respondent-mother in understanding and resolving these issues. Accordingly, we conclude the court did not abuse its discretion.

Respondent-father argues that the court abused its discretion by ordering him to complete a sex offender assessment and comply with its recommendations. Specifically, Respondent-father contends that the district court was collaterally estopped[10] from imposing this condition because prior courts had ruled that all previous allegations of sexual abuse by Respondent-father were unfounded. We disagree.

The March 2010 petition regarding Kim alleged that Respondent-father "exhibited sexually deviant behaviors[.]" In the order dismissing the March 2010 petition, the district court made no findings regarding the allegation that Respondent-father "engage[d] in sexually deviant behaviors[,]" finding only that he had "not been involved with [Kim] since birth." The June

---

[10] Collateral estoppel applies only to parties, and not to courts. *See King v. Grindstaff*, 284 N.C. 348, 356, 200 S.E.2d 799, 805 (1973) (observing that under the doctrine of "collateral estoppel by judgment, *parties and parties in privity with them* — even in unrelated causes of action — are precluded from retrying fully litigated issues that were decided in any prior determination and were necessary to the prior determination") (citations omitted; emphasis added).

2010 petition alleged several acts of sexual abuse by Respondent-father against Kim and stated that Respondent-mother believed Respondent-father had "molested his half-sibling[,]" presumably a reference to the allegations made by D.H. In the order dated 21 July 2010 which returned Kim to the custody of Respondent-parents, the court found that no reasonable factual basis existed to support the allegations that Kim had been sexually abused by Respondent-father or that Kim was at risk of sexual abuse while in his care. DSS then voluntarily dismissed the June 2010 petition. At the adjudication hearing in the current matter, a DSS social worker testified that D.H. had accused Respondent-father of sexually abusing him.[11]

However, *nothing* in the adjudication and disposition order before this Court suggests that these *previous* concerns about Respondent-father's possible sexual abuse of Kim or D.H. prompted the condition that he undergo a sexual offender assessment and any treatment recommended as a result thereof. Rather, it appears that Kim's sexual acting out, which appears to have occurred *after* June 2010, led to the condition that Respondent-father undergo a sexual offender assessment. In

---

[11] Nothing in the record suggests there has been any legal determination that Respondent-father did or did not sexually abuse D.H.

unchallenged findings of fact 52-55 the district court found that: (1) at a March 2013 home visit, Kim's foster parents expressed concerns about Kim's sexual acting out in the form of public masturbating and possible attempted sexual interactions with Henry;[12] (2) Respondent-parents acknowledged this behavior began *before* Kim was removed from their custody; (3) Respondent-father felt these behaviors were normal; and (4) Kim has been referred for appropriate counseling. None of these facts had been introduced into evidence in any previous matter nor has any court previously considered them. In light of these unchallenged findings of fact, we hold the court did not abuse its discretion by ordering Respondent-father to complete a sex offender assessment and follow any recommended treatment.

In sum, we affirm the adjudication of Kim and Henry as neglected juveniles and the court's resulting disposition. We reverse the adjudication of dependency.

AFFIRMED in part; REVERSED in part.

Judges BRYANT and DILLON concur.

Report per Rule 30(e).

---

[12] At the time of these reports, Kim was just over three years old, and Henry was about 18 months old.