IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-296

Filed 17 September 2024

Wilkes County, Nos. 21 JT 104-05, 121

IN THE MATTER OF: K.B.C., A.G.S.C., J.N.C.

Appeal by Respondent-Father from Orders entered 15 December 2023 by Judge William F. Brooks in Wilkes County District Court. Heard in the Court of Appeals 27 August 2024.

> *Parent Defender Wendy C. Sotolongo, by Assistant Parent Defender Jacky Brammer, for Respondent-Apellant Father.*
>
> *Sherryl West for Petitioner-Appellee Wilkes County Department of Social Services.*
>
> *Brooks, Pierce, McLendon, Humphrey & Leonard, LLP., by Samuel J. Ervin, IV, for Guardian ad litem.*

HAMPSON, Judge.

## **Factual and Procedural Background**

Respondent-Father appeals from Orders terminating his parental rights in Karen, Amy, and Julie.[1] The Record before us tends to reflect the following:

---

[1] Pseudonyms stipulated to by the parties pursuant to Rule 42(b) of the North Carolina Rules of Appellate Procedure.

On 6 December 2020, Wilkes County Department of Social Services (DSS) received a report that Amy and Karen, who were two-and-a-half and one-and-a-half years old respectively, were wandering alone in the parking lot of a motel while Mother[2] was sleeping in a motel room. Following substantiation of this allegation, both Mother and Respondent-Father entered into a safety plan with DSS. Pursuant to this safety plan, Respondent-Father was required to supervise the children's interactions with Mother at all times.

On 9 March 2021, Debbie Barker (SW Barker), the DSS social worker assigned to the family, was unable to locate them at their last known address. SW Barker then went to Respondent-Father's place of employment, a sawmill, and found Amy and Karen walking around the parking lot alone in only diapers and t-shirts. Mother was asleep in the family van. Respondent-Father was not present at the scene, in violation of the safety plan. Following this incident, Amy and Karen were placed with a temporary safety placement Respondent-Father had suggested. On 19 March 2021, Respondent-Father signed a case management plan in which he agreed to participate in random drug screenings, locate appropriate housing, and make weekly contact with the social worker.

On 29 April 2021, Respondent-Father was arrested for receiving stolen goods and was incarcerated in the Wilkes County Jail. While Respondent-Father was

---

[2] Mother is not a party to this appeal.

incarcerated, the minor children's temporary safety placement informed DSS they were no longer willing to care for the minor children. Respondent-Father provided SW Barker with his aunt and uncle as a temporary safety placement, and the children were subsequently placed with them.

On or about 4 July 2021, Respondent-Father was arrested for possession of methamphetamine, felony larceny, breaking and entering, larceny of a firearm, and failure to pay child support. Respondent-Father was sentenced to a term of incarceration, and his projected release date at the time of the termination hearing was 13 May 2032. On 8 July 2021, the children's placement informed DSS that they could not be a long-term placement for the minor children, but they would continue to care for them until DSS could find another placement. On 13 July 2021, DSS filed petitions alleging Karen and Amy were neglected juveniles.

On 15 August 2021, Mother gave birth to Julie several weeks prematurely. Julie weighed just over three pounds and tested positive for amphetamines, methamphetamine, and marijuana. On 16 August 2021, Mother left the hospital against medical advice and had no contact with DSS. On 23 August 2021, DSS filed a petition alleging Julie was a neglected and dependent juvenile and took her into nonsecure custody.

On 18 August 2021, SW Barker visited Respondent-Father at the Wilkes County Jail to inform him of Julie's birth and request that he provide another temporary safety placement for the minor children. Respondent-Father named one

of his older daughters, as well as a friend and his wife, as potential placements. DSS could not approve Respondent-Father's daughter as a placement. Respondent-Father did not have a phone number for his friend, but he believed the friend and his wife lived somewhere on Highway 115 near a Dollar General. SW Barker was unable to locate them in a phone book or online. She also went out to the area described by Respondent-Father but was unable to locate them.

On 30 June 2022, all three minor children were adjudicated neglected, placed in DSS custody, and entered foster care. On 16 March 2023, DSS filed petitions to terminate both parents' parental rights in all three minor children. These Petitions came on for hearing on 17 November 2023. During these proceedings, Respondent-Father's counsel called David Borrows, the Guardian ad litem (GAL), to testify. Counsel for Respondent-Father elicited testimony that on 7 October 2022, GAL had visited Respondent-Father in prison "to find out what his intentions were and whether or not, if in the event TPR was ordered, whether he would intent [sic] to fight that." Counsel asked GAL: "And did [Respondent-Father] sign relinquishment papers at that point?" GAL responded: "I don't think it was a relinquishment paper at all. It was just a statement saying that he had no intention to fight the order [terminating his parental rights], if he were ordered by the court." GAL further testified he had written the statement Respondent-Father signed and he subsequently submitted it to the trial court. The statement read:

I, [Respondent-Father] am the father of [Julie, Karen and Amy].

> I understand that my children are currently in foster care and are being well cared for. I believe it is in my childrens' [sic] best interest for them to remain in their present situation.
>
> I am informed by the Guardian ad Litem that the present caregivers wish to adopt my children. I state that I have no intention to oppose a court order to this effect.

GAL did not contact Respondent-Father's attorney, and his attorney was not present during this conversation with GAL. Counsel for GAL asked the trial court to admit the signed statement. No party objected to admission of the statement, and the trial court admitted it as evidence.

On 15 December 2023, the trial court entered Orders terminating both parents' parental rights in Karen, Amy, and Julie. In its Orders, the trial court concluded grounds existed to terminate Respondent-Father's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(6) and (9). The Orders were served 29 December 2023. Respondent-Father timely filed Notice of Appeal on 16 January 2024. On 9 May 2024, Respondent-Father filed a Petition for Writ of Certiorari to address certain defects in his Notice of Appeal.

## **Appellate Jurisdiction**

The trial court filed its Orders terminating Respondent-Father's parental rights on 15 December 2023; however, the Orders were not served until 29 December 2023. Our Rules of Appellate Procedure provide that in appeals filed under N.C. Gen. Stat. § 7B-1001, notice of appeal is governed by Section 7B-1001(b) and (c). N.C.R.

App. P. 3.1(b) (2023). Section 7B-1001(b), in turn, states notice of appeal "shall be given in writing by a proper party as defined in G.S. 7B-1002 and shall be made within 30 days after entry *and service of the order* in accordance with G.S. 1A-1, Rule 58." N.C. Gen. Stat. § 7B-1001(b) (2023) (emphasis added).

Here, the Orders were not served until 29 December 2023. Under Rule 58 of our Rules of Civil Procedure, when a party fails to serve a copy of the judgment upon the other parties within three days after the judgment is entered, "[a]ll time periods within which a party may further act pursuant to Rule 50(b), Rule 52(b), or Rule 59 shall be tolled for the duration of any period of noncompliance with this service requirement[.]" N.C. Gen. Stat. § 1A-1, Rule 58 (2023). Thus, because the Orders were not served on Respondent-Father for fourteen days after their filing, the thirty-day window for Respondent-Father to file notice of appeal was tolled until the Orders were served. Therefore, Respondent-Father had thirty days from service of the Orders on 29 December 2023 to file notice of appeal. He did so on 16 January 2024, well within that thirty-day window. Accordingly, Notice of Appeal was timely filed.

Additionally, although Respondent-Father's Notice of Appeal contained two defects, these defects are non-jurisdictional, and we conclude his Notice of Appeal was sufficient. First, Respondent-Father incorrectly designated his appeal to the North Carolina Supreme Court rather than the Court of Appeals. However, this Court has previously held "a defendant's failure to designate this Court in a notice of appeal does not warrant dismissal of the appeal where this Court is the only court possessing

jurisdiction to hear the matter and the [opposing party] has not suggested that it was misled by the defendant's flawed notice of appeal." *State v. Sitosky*, 238 N.C. App. 558, 560, 767 S.E.2d 623, 624 (2014) (citing *State v. Ragland*, 226 N.C. App. 547, 552-53, 739 S.E.2d 616, 620 (2013)). *See also Phelps Staffing, LLC v. S.C. Phelps, Inc.*, 217 N.C. App. 403, 410, 720 S.E.2d 785, 791 (2011) (notice of appeal was sufficient to confer jurisdiction where "[d]efendants could fairly infer Plaintiff's intent to appeal to this Court, as this Court is the only court with jurisdiction over Plaintiff's appeal.").

Second, Respondent-Father's Notice of Appeal failed to include the correct statute providing for his right to appeal. As above, this Court has previously heard appeals despite a party's failure to include the correct statute in its notice of appeal. *E.g.*, *Maldjian v. Bloomquist*, 245 N.C. App. 222, 225, 782 S.E.2d 80, 83 (2016) (noting defendants' failure to include a statutory citation in their notice of appeal, but determining "[n]onetheless, we review defendants' appeal . . ."). Thus, neither defect in Respondent-Father's Notice of Appeal is jurisdictional. Therefore, this Court has jurisdiction to hear his appeal.[3]

## Issues

The issues on appeal are whether the trial court erred by: (I) admitting the signed statement procured by GAL; and (II) concluding grounds existed to terminate Respondent-Father's parental rights.

---

[3] Consequently, because we have appellate jurisdiction, we dismiss Respondent-Father's Petition for Writ of Certiorari.

## Analysis

I.    Admission of Signed Statement

Respondent-Father contends the trial court admitted and considered as evidence GAL's "makeshift surrender" and, in doing so, denied Respondent-Father his right to counsel and right to fundamentally fair procedures. More specifically, Respondent-Father argues his interaction with GAL in which he signed the surrender violated his right to counsel, which is "an extension of a father's right to fundamental[ly] fair procedures" because GAL "encouraged [Respondent-Father] to surrender his parental rights" in the absence of counsel.

As an initial matter, DSS and GAL correctly note the trial court would not have heard the contested evidence had Respondent-Father not called GAL to testify and elicited the testimony about which Respondent-Father now complains. It is well-established under our caselaw that a party is not entitled to seek relief on appeal from a trial court action the party invited. *See e.g.*, *State v. Payne*, 280 N.C. 170, 171, 185 S.E.2d 101, 102 (1971) ("Ordinarily one who causes . . . the court to commit error is not in a position to repudiate his action or assign it as ground for a new trial."); *Frugard v. Pritchard*, 338 N.C. 508, 512, 450 S.E.2d 744, 746 (1994) ("A party may not complain of action which he induced."). *See also* N.C. Gen. Stat. § 15A-1443(c) (2023) ("A defendant is not prejudiced by the granting of relief which he has sought or by error resulting from his own conduct.").

Here, counsel for Respondent-Father called GAL to testify and affirmatively

elicited testimony tending to show Respondent-Father signed a statement that he would not oppose the entry of an order allowing the children to be adopted by their current foster family. Counsel for Respondent-Father specifically asked GAL:

> [Counsel]: And then you did go see [Respondent-Father] while he was in Roanoke, right?
>
> [GAL]: I did.
>
> [Counsel]: And what was the nature of that visit?
>
> [GAL]: I wanted to find out what his intentions were and whether or not, if in the event if TPR was ordered, whether he would intent [sic] to fight that.
>
> [Counsel]: And did he sign relinquishment papers at that point?
>
> [GAL]: I don't think it was a relinquishment paper at all. It was just a statement saying that he had no intention to fight the order, if he were ordered by the court.
>
> . . . .
>
> [Counsel]: Were you trying to act in the best interest of the minor children?
>
> [GAL]: Absolutely.

Thus, even if the trial court's admission and consideration of GAL's testimony was error, such error was invited by Respondent-Father and, consequently, he is not entitled to relief on appeal.

Even setting aside any invited error, Respondent-Father failed to preserve his right to challenge the admission and consideration of GAL's evidence on review. Our Rules of Appellate Procedure provide:

> In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context. It is also necessary for the complaining party to obtain a ruling upon the party's request, objection, or motion.

N.C.R. App. P. 10(a)(1) (2023).

The transcript of the proceeding reflects no such objection, motion, or request by Respondent-Father as to either the GAL's testimony or the admission of Respondent-Father's signed statement into evidence. Thus, this issue was not preserved for appellate review. In his briefing to this Court, Respondent-Father makes no argument to the contrary. Therefore, this issue is not preserved for appellate review.

II.    Termination of Parental Rights

Respondent-Father contends the trial court erred in terminating his parental rights in the minor children because it impermissibly based its determination grounds existed to terminate his parental rights solely on his incarceration. We disagree.

"A proceeding to terminate parental rights is a two step process with an adjudicatory stage and a dispositional stage. A different standard of review applies to each stage. In the adjudicatory stage, the burden is on the petitioner to prove by clear, cogent, and convincing evidence that one of the grounds for termination of parental rights set forth in N.C. Gen. Stat. § 7B-1111(a) exists." *In re D.R.B.*, 182

N.C. App. 733, 735, 643 S.E.2d 77, 79 (2007). "The standard for appellate review is whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence and whether those findings of fact support its conclusions of law." *Id.* Unchallenged findings of fact are binding on review. *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991) (citations omitted).

"If the petitioner meets its burden of proving at least one ground for termination of parental rights exists under N.C. Gen. Stat. § 7B-1111(a), the court proceeds to the dispositional phase and determines whether termination of parental rights is in the best interests of the child." *In re C.C., J.C.*, 173 N.C. App. 375, 380-81, 618 S.E.2d 813, 817 (2005) (citation omitted). "The standard of review of the dispositional stage is whether the trial court abused its discretion in terminating parental rights." *Id.* at 380-81, 618 S.E.2d at 817. "An abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *In re T.L.H.*, 368 N.C. 101, 107, 772 S.E.2d 451, 455 (2015) (citation and quotation marks omitted).

Here, the trial court concluded Respondent-Father's parental rights were subject to termination pursuant to N.C. Gen. Stat. § 7B-1111(a)(6), which provides a court may terminate a party's parental rights upon a finding

> [t]hat the parent is incapable of providing for the proper care and supervision of the juvenile, such that the juvenile is a dependent juvenile within the meaning of G.S. 7B-101, and that there is a reasonable probability that the incapability will continue for the foreseeable future. Incapability under this subdivision may be

the result of substance abuse, intellectual disability, mental illness, organic brain syndrome, or any other cause or condition that renders the parent unable or unavailable to parent the juvenile and the parent lacks an appropriate alternative child care arrangement.

N.C. Gen. Stat. § 7B-1111(a)(6) (2023). Under N.C. Gen. Stat. § 7B-101, a "dependent juvenile" is one "in need of assistance or placement because (i) the juvenile has no parent, guardian, or custodian responsible for the juvenile's care or supervision or (ii) the juvenile's parent, guardian, or custodian is unable to provide for the juvenile's care or supervision and lacks an appropriate alternative child care arrangement." N.C. Gen. Stat. § 7B-101(9) (2023). "Thus, the trial court's findings regarding this ground 'must address both (1) the parent's ability to provide care or supervision, and (2) the availability to the parent of alternative child care arrangements.' " *In re L.R.S.*, 237 N.C. App. 16, 19, 764 S.E.2d 908, 910 (2014) (quoting *In re P.M.*, 169 N.C. App. 423, 427, 610 S.E.2d 403, 406 (2005)).

In support of this Conclusion, the trial court made specific Findings that are unchallenged on appeal, including the following:

> 25. On April 29, 2021, the Respondent Father was arrested for receiving stolen goods. The social worker is unaware of the length of this incarceration.
>
> . . . .
>
> 27. On or about July 4, 2021, the Respondent Father was arrested for larceny of a firearm, drug related charges, as well as other matters. He has not been out of custody since that day.
>
> . . . .

29. On or about July 8, 2021, [Paternal Aunt] contacted [DSS] and informed that she and her husband could not be long term placement for [Karen] and [Amy] and asked [DSS] to find a good home for the children.

. . . .

34. In addition, Social Worker Barker spoke to the Respondent Father at the jail to ascertain any other possible placements for all three of his daughters. He named his older daughter, . . . who could not be approved by [DSS]. He also named Tom and Lisa Parsons. The Respondent Father had been incarcerated with Mr. Parsons. He did not have a phone number for the Parsons', but thought that they lived somewhere on Highway 115 near a Dollar General. The social worker searched the phone book and on line [sic] in an attempt to locate the Parsons'. She also went out to the area of the Dollar General to try to locate them with no luck. The Respondent Mother could not be located to ask for potential temporary placements.

. . . .

55. Although the Respondent Father did provide two temporary safety placements for [Karen] and [Amy], neither were willing to care for [Karen] and [Amy] long term. Social Worker Debbie Barker investigated two additional possible placements recommended by the Respondent Father. His older daughter . . . could not be approved by [DSS]. He also named Tom and Lisa Parsons. Social Worker Barker could not locate them. Therefore, he lacked an appropriate alternative child care arrangement as to [Karen].

. . . .

59. The Respondent Father was sentenced as a habitual felon and is scheduled to be released from incarceration on May 13, 2032.

60. The Respondent Father is incapable of providing for the proper care and supervision of the juvenile, such that the juvenile is a dependent juvenile within the meaning of N.C.G.S. 7B-101,

and there is a reasonable probability that the incapability will continue for the foreseeable future.

. . . .

63. Incarceration alone is neither a sword or a shield in a termination of parental rights decision. Though it is clear to the Court that the Respondent Father loves the minor child, there is a reasonable probability that the Respondent Father's incapability will continue for the foreseeable future. For the next nine years, he will not be able to provide and care for the minor child or have a personal relationship with her. These things are integral to the happiness, well-being and safety of the minor child, and the Respondent Father will not be in a position to provide these for the minor child.

The trial court made identical Findings in its Orders regarding Amy and Julie.

Further, Kirsten Shepherd (SW Shepherd), a social worker for DSS, testified about

Respondent-Father's capacity to care for the children while incarcerated:

[Counsel for DSS]: [Respondent-Father] was doing what he could while incarcerated in jail or prison?

[SW Shepard]: Right.

[Counsel for DSS]: But, obviously, he could not establish housing for the children?

[SW Shepard]: Correct.

[Counsel for DSS]: He wasn't able to visit the children in person–

[SW Shepard]: Correct.

[Counsel for DSS]: –because of his circumstances? Obviously he couldn't be employed or supervise children while in jail or prison?

[SW Shepard]: Correct.

Respondent-Father contends the trial court erred in concluding this ground for termination existed because its "entire basis for the dependency termination ground was [Respondent-Father]'s incarceration." This Court has consistently affirmed that "[i]ncarceration, standing alone, is neither a sword nor a shield in a termination of parental rights decision." *In re P.L.P.*, 173 N.C. App. 1, 10, 618 S.E.2d 241, 247 (2005) (quoting *In re Yocum*, 158 N.C. App. 198, 207-08, 580 S.E.2d 399, 405 (2003)). However, as the above demonstrates, the trial court considered, beyond the fact of Respondent-Father's incarceration, the substantial length of Respondent-Father's sentence, its effect upon the minor children, the minor children's physical and emotional well-being, and Respondent-Father's lack of appropriate alternative placements for the children. The trial court expressly noted that because of his incarceration, "[f]or the next nine years, [Respondent-Father] will not be able to provide and care for the minor child[ren] or have a personal relationship with [them]. These things are integral to the happiness, well-being and safety of the minor child[ren][.]" Consideration of a parent's incarceration in this way is consistent with our precedent.

Our Supreme Court in *In re A.L.S.* considered an appeal by a respondent-parent whose parental rights had been terminated pursuant to N.C. Gen. Stat. § 7B-1111(a)(6). 375 N.C. 708, 851 S.E.2d 22 (2020). There, the respondent-parent was incarcerated during the proceedings and appeal, and she faced twenty-two to forty-two additional months of imprisonment. *Id.* at 714, 851 S.E.2d at 27. The Court

explained "[t]he fact that respondent-mother faces an *extended period of incarceration* regardless of the exact date upon which she is scheduled to be released provides ample support for the trial court's determination that she was incapable of providing for the proper care and supervision of the children and that there was a reasonable probability that her incapability would continue for the foreseeable future." *Id.* (citations omitted) (emphasis added). Likewise, this Court has also found extended periods of incarceration can render a parent incapable of providing sufficient care and supervision of a minor child. *See, e.g.*, *In re L.R.S.*, 237 N.C. App. at 21, 764 S.E.2d at 911; *In re N.T.U.*, 234 N.C. App. 722, 735, 760 S.E.2d 49, 58 (2014).

Additionally, the Record establishes Respondent-Father was unable to provide an appropriate alternative childcare arrangement for the minor children. The minor children, upon Respondent-Father's recommendation, had on two separate occasions been placed with caretakers; however, neither placement was willing to provide long-term care for the children. Most recently, Respondent-Father proposed his adult daughter, as well as a friend of his. As the trial court noted in its Findings, DSS was unable to approve Respondent-Father's daughter as a placement and DSS was unable to locate Respondent-Father's friend. Thus, the Record supports the trial court's Finding that Respondent-Father lacked an appropriate alternative childcare arrangement, and that Respondent-Father is unable to provide proper care and supervision for the minor children. Therefore, the trial court did not err in concluding Respondent-Father's parental rights were subject to termination based on

dependency pursuant to N.C. Gen. Stat. § 7B-1111(a)(6).[4]  Further, Respondent-Father makes no arguments as to disposition.  Consequently, the trial court did not err in concluding it was in the best interests of the children to terminate Respondent-Father's parental rights and entering its Orders terminating Respondent-Father's parental rights.

## **Conclusion**

Accordingly, for the foregoing reasons, we affirm the trial court's Orders terminating Respondent-Father's parental rights in Karen, Amy, and Julie.


AFFIRMED.

Judges CARPENTER and GRIFFIN concur.

---

[4] Because we conclude this ground has ample support in the trial court's Findings, we need not address Respondent-Father's arguments as to the remaining termination ground found by the trial court under N.C. Gen. Stat. § 7B-1111(a)(9).  *See In re P.L.P.*, 173 N.C. App. at 8, 618 S.E.2d at 246 ("[W]here the trial court finds multiple grounds on which to base a termination of parental rights, and an appellate court determines there is at least one ground to support a conclusion that parental rights should be terminated, it is unnecessary to address the remaining grounds." (citation and quotation marks omitted)).