An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-910

Filed 1 October 2025

Lincoln County, Nos. 23JA000034-540, 23JA000050-540

IN THE MATTER OF:

F.L.H.

R.R.H.

Appeal by respondents from adjudication orders entered 18 April 2024 and dispositional orders entered 24 May 2024 by Judge J. Brad Champion in Lincoln County District Court. Heard in the Court of Appeals 24 April 2025.

*Orion Douglas Memmott, pro se, for respondent-appellant nonrelative extended family member with kinship.*

*Mercedes O. Chut for respondent-appellant-mother.*

*Teague, Campbell, Dennis, & Gorham, LLP, by Jacob H. Wellman, and Jessica Fielding Yelverton, for petitioner-appellee Lincoln County Department of Social Services.*

*Cooper Legal Firm, PC, by Stephanie L. Cooper DeMaioribus, for appellee Guardian Ad Litem.*

GORE, Judge.

**I.**

This case concerns the adjudication of F.L.H. ("Frances") and R.R.H. ("Rick")

as neglected and dependent juveniles by the District Court, Lincoln County. Respondent-mother appeals the trial court's orders, contending the court lacked subject matter jurisdiction, erred in its findings of neglect and dependency, and improperly relied on post-petition evidence. After careful review, we conclude that the trial court's orders were supported by clear and convincing evidence and properly entered in accordance with North Carolina law. Accordingly, we affirm the trial court's adjudication and disposition orders.

The motion filed in this cause on 8 November 2024 and designated "Motion to Dismiss Appeal" was allowed by order filed 2 December 2024. Appeal dismissed as to respondent Orion Douglas Memmott. Respondent-mother's appeal remains.

## II.

### A.

On 17 January 2023, the Lincoln County Department of Social Services ("DSS") received a Child Protective Services ("CPS") report alleging respondent-mother engaged in excessive alcohol use and possible drug abuse, exhibited violent outbursts, and created an environment where her children, Frances and Rick, were afraid to return home. The report also described unsanitary living conditions, including a dirty home with uncleaned animal waste.

Upon investigation, DSS determined the allegations were substantiated as "in need of services," and an in-home services plan was initiated. As part of this plan, respondent-mother was instructed to complete a substance abuse assessment and

comply with treatment recommendations; complete a mental health assessment and follow all treatment recommendations; enroll in parenting classes; and obtain stable employment. Respondent-mother refused to engage with DSS social workers and was ultimately unreachable until her 4 March 2023 arrest on trespassing charges.

**B.**

While respondent-mother remained incarcerated, Donna Harris, the children's maternal grandmother, arranged for Rick to move to California to live with her ex-husband, Douglas Memmott. When DSS social worker Kelly Pendleton confronted Donna Harris, she initially claimed legal guardianship over Rick but later provided incomplete documentation.

Upon respondent-mother's 21 March 2023 release from jail, she failed to contact DSS as directed, and DSS was unable to locate her. DSS subsequently filed a juvenile petition on 23 March 2023 seeking nonsecure custody of Frances.

While the petition was pending, Frances was diagnosed with severe dental decay requiring surgical intervention, but no legal guardian was available to consent to treatment. On 6 April 2023, DSS sought and obtained nonsecure custody of Frances, intending to allow her to remain in Donna Harris's care while authorizing her medical treatment.

However, on 6 April 2023, Donna Harris allowed Douglas Memmott to take Frances to California, without DSS approval. When Memmott failed to return Frances by the agreed deadline, law enforcement intervened, and Memmott was

arrested on child abduction charges. California DSS took custody of both children until Lincoln County DSS secured their return to North Carolina.

Upon their return, the trial court held a 25 April 2023 nonsecure custody review hearing, at which Frances remained in DSS custody, while Rick was placed back with Donna Harris.

**C.**

DSS amended its petition for Frances on 17 April 2023 to include her urgent dental issues, and for Rick on 26 May 2023 to include concerns about his untreated mental health conditions.

The trial court held adjudication hearings beginning 10 September 2023. Evidence presented included: Frances' delayed dental surgery, which was performed only after DSS secured custody; Rick's ADHD medication noncompliance, evidenced by negative drug screens and discrepancies in pill counts while under Donna Harris's care; testimony that Donna Harris attempted to wean Rick off medication without medical supervision; and respondent-mother's transient behavior and failure to maintain contact.

On 10 October 2023, the trial court entered written orders adjudicating Frances and Rick as neglected and dependent juveniles, concluding that respondent-mother failed to provide proper care, supervision, and discipline; Frances' dental neglect and Rick's mental health mismanagement were substantial indicators of neglect; and no suitable alternative caregiver was available, as Donna Harris was

unfit due to cognitive impairments and poor medical decision-making.

Respondent-mother appealed these orders, arguing lack of jurisdiction, insufficient evidence, and improper reliance on post-petition evidence.

## III.

Respondent-mother argues the trial court lacked subject matter jurisdiction because the juvenile petitions failed to properly allege dependency. However, jurisdiction in neglect and dependency proceedings is conferred by a properly filed petition containing sufficient factual allegations. *See* N.C.G.S. § 7B-402(a); *In re D.C.*, 183 N.C. App. 344, 349 (2007). Even if a petitioner fails to check the correct box, jurisdiction exists if the petition's factual allegations provide adequate notice. *In re K.B.*, 253 N.C. App. 423, 427 (2017).

Here, the original and amended petitions alleged both neglect and dependency, citing mother's substance abuse, transient behavior, failure to provide medical care, and lack of a suitable alternative caregiver. Frances's urgent need for dental surgery without an authorized caregiver, and Rick's untreated mental health conditions, were dependency concerns. These allegations were sufficient to invoke jurisdiction, and the trial court's findings mirrored the petitions' contents.

Because the petitions met statutory requirements and provided ample notice, the trial court properly exercised jurisdiction. *See In re T.R.P.*, 360 N.C. 588, 593 (2006) ("A trial court's subject matter jurisdiction over all stages of a juvenile case is established when the action is initiated with the filing of a properly verified

petition."). Respondent-mother's jurisdictional challenge is without merit.

**IV.**

Respondent-mother challenges the trial court's adjudication of neglect, arguing the findings were unsupported by clear and convincing evidence. Under N.C.G.S. § 7B-101(15), a neglected juvenile is one whose parent, guardian, or caretaker fails to provide "proper care, supervision, or discipline" or creates "a living environment that is injurious to the juvenile's welfare." The trial court's findings must be supported by clear and convincing evidence and must establish actual or substantial risk of harm. *See In re K.L.*, 272 N.C. App. 30, 36 (2020).

Here, the trial court found that Frances suffered severe dental decay requiring surgery, which was delayed due to respondent-mother's absence and failure to authorize treatment. The home was also found to be unsanitary, with filth and uncleaned animal waste, and respondent-mother had a pattern of transient behavior and substance abuse, making her an unreliable caretaker. Regarding Rick, the evidence established that his ADHD and depression medications were mismanaged, and Donna Harris attempted to wean him off without medical supervision. The trial court properly concluded that these conditions placed the children at substantial risk of harm.

Because the trial court's findings are supported by clear and convincing evidence, we affirm its determination that Frances and Rick are neglected juveniles.

**V.**

Respondent-mother challenges the trial court's adjudication of dependency, arguing the evidence did not establish her inability to provide care or a lack of suitable alternative caregivers. Under N.C.G.S. § 7B-101(9), a dependent juvenile is one whose parent, guardian, or custodian "is unable to provide for the juvenile's care or supervision and lacks an appropriate alternative child care arrangement." Both elements must be met to support a dependency adjudication. *See In re P.M.*, 169 N.C. App. 423, 427–28 (2005). Our courts have emphasized that a parent must take affirmative steps to identify viable alternative caregivers, and the failure to do so supports a finding of dependency. *In re L.H.*, 210 N.C. App. 355, 364 (2011); *In re J.D.L.*, 199 N.C. App. 182, 189 (2009).

The trial court found, and the record supports, that respondent-mother was unable to provide adequate care due to her substance abuse, transient lifestyle, and failure to seek necessary medical treatment for her children. Additionally, the court determined that no suitable alternative caregiver was available. Donna Harris, the maternal grandmother, was found to be unfit due to cognitive impairments and her failure to properly manage Rick's mental health treatment.

Although respondent-mother now asserts that Jason Lazenby and Douglas Memmott were appropriate options, neither was presented to the trial court as a viable caregiver. *See In re D.J.D.*, 171 N.C. App. 230, 239 (2005) (rejecting proposed caregiver not shown to be willing or able to care for children). Even assuming the issue was preserved, the record supports the court's implicit rejection of both

individuals. Lazenby had not been adjudicated as Frances's father, there was no evidence she had met him, and legal paternity had not been established. Memmott had no legal relationship to the children, had been charged with child abduction, and DSS had documented safety concerns regarding his controlling and abusive behavior.

At the time the petitions were filed, the children's living arrangements were temporary and legally insecure. Neither situation constituted a permanent guardianship or other court-sanctioned placement that could satisfy the statutory requirement for an "appropriate alternative child care arrangement." *See In re A.L.L.*, 376 N.C. 99, 108–09 (2020) (contrasting the stability of permanent guardianship with temporary arrangements subject to change). Because no legally secure, appropriate caregiver was available, the trial court properly found the second prong of dependency satisfied.

Because clear and convincing evidence demonstrated that respondent-mother was unable to provide proper care and no suitable alternative caregiver existed at the relevant time, the trial court properly adjudicated Frances and Rick as dependent juveniles.

## VI.

Respondent-mother argues the trial court improperly relied on post-petition evidence in adjudicating neglect and dependency, asserting the court should have considered only the circumstances existing at the time of the petition's filing. We disagree.

While post-petition evidence is generally not admissible to establish neglect or dependency, North Carolina courts recognize an exception for "fixed and ongoing" conditions that existed before the petition and continued thereafter. *In re G.W.*, 286 N.C. App. 587, 594 (2022). While "the conditions underlying determination of whether a juvenile is an abused, neglected, or dependent juvenile are fixed at the time of the filing of the petition[,]" *In re L.N.H.*, 382 N.C. 536, 543 (2022), post-petition evidence may be considered where it illustrates a pattern of parental behavior, rather than an isolated event, "relevant to the existence or nonexistence of conditions alleged in the adjudication petition[,]" *In re G.W.*, 286 N.C. App. at 594 (cleaned up).

Here, the trial court did not rely on discrete post-petition events but rather considered evidence of respondent-mother's ongoing neglect and unfitness, including her transient lifestyle, substance abuse, and failure to provide medical care. Additionally, evidence of Rick's continued failure to receive prescribed medication and Frances's untreated dental issues demonstrated persistent and unremedied neglect. This evidence was relevant to show that the conditions leading to removal had not improved and that the risk of harm remained ongoing.

Because the trial court properly applied the fixed and ongoing conditions exception, and did not rely on impermissible post-petition events, its consideration of this evidence was not erroneous. Accordingly, respondent-mother's challenge on this ground is without merit.

## VII.

The trial court's adjudications of neglect and dependency were supported by clear and convincing evidence. The trial court properly exercised jurisdiction and admitted post-petition evidence under the fixed and ongoing conditions exception. Because its findings were well-supported and legally sound, the orders are affirmed.

AFFIRMED.

Judges CARPENTER and FLOOD concur.

Report per Rule 30(e).